(104 So. 709)

No. 26805.

## SNELL v. AUCOIN et al.

(March 30, 1925.  Rehearing Denied May 25, 1925.)

*(Syllabus by Editorial Staff.)*

**1. Divorce ⊜124—Evidence held to show mutual acts of omission and commission by both parties to entitle neither to decree.**

In suit by wife for separation from bed and board, evidence *held* to show acts of omission and commission by both parties toward each other of same character and so proportional that neither would be granted relief.

**2. Divorce ⊜55—Will not be granted, where spouses are guilty of mutual wrongs of same character.**

Where spouses are guilty of mutual misconduct toward each other of same character, and so proportional that party at greatest fault cannot readily be determined, neither will be granted relief by courts.

Appeal from Twenty-Third Judicial District Court, Parish of St. Mary;  James Simon, Judge.

Suit by Mrs. Doveline Marie Snell against Albert Numa Aucoin and others.  Decree for plaintiff, and defendants appeal.  Reversed, and plaintiff's suit dismissed, and demands of defendant named in reconvention rejected.

C. A. Blanchard, of Morgan City, and C. S. Hebert, of New Orleans, for appellants.

Bennett J. Voorhies, of Lafayette, Walter T. Gilmore, of Morgan City, and Borah, Himel, Bloch & Borah, of Franklin, for appellee.

BRUNOT, J.  Plaintiff sued her husband for a separation from bed and board, for a dissolution of the community of acquêts and gains, for the custody of their minor child, for alimony, and for the annulment of certain sales of the community property made by the husband prior to plaintiff's abandonment of the matrimonial domicile.

The case was tried, and from a judgment in favor of plaintiff decreeing a separation from bed and board, giving her the custody of the minor, dissolving the community, awarding plaintiff alimony and attorneys' fees, enjoining the defendant from disposing of any of the community property, and decreeing the nullity of the sales of certain of the community property, which are attacked in the suit, the defendant has appealed.

The primary question presented is whether or not the wife was legally justified in abandoning the matrimonial domicile and in instituting this suit for separation from bed and board.  All other issues are subordinate to the determination of this controlling question.

The pleadings are numerous and lengthy. The petition alleges that plaintiff had been a dutiful wife, had always conducted herself properly and had done everything in her power to make the home happy and comfortable for her husband, but, notwithstanding her efforts so to do, and, although she gave him no occasion to mistreat her, he was guilty of constantly repeated excesses and outrages towards her of such a nature as to render their living together insupportable. The specific acts charged in the petition as grounds for the separation may be summarized as follows:  Twelve days after their marriage plaintiff's husband expressed regret that he had married plaintiff;  he was always rough towards plaintiff and refused to speak to her;  on several occasions he threatened to strike plaintiff, and he shook his fist at her;  he would not pay plaintiff's doctor and medical bills but forced plaintiff to pay them;  on one occasion, although plaintiff was very sick, he refused to get a doctor for her;  he refused to give plaintiff the proper necessities;  he was cruel to the child;  he would not visit plaintiff when she was sick;  he would not take his meals with his family;  he would not get help for plaintiff;  and, upon plaintiff's return home from a motion picture show, on a certain night

SNELL, v. AUCOIN

about two months prior to the institution of this suit, he cursed her and her daughter in a vulgar and obscene manner.

The defendant excepted to the petition on the ground that it did not disclose a right or cause of action. He also filed an exception of vagueness. Both exceptions were overruled. Defendant was then ruled into court to show cause why he should not pay the plaintiff alimony. To this rule he filed exceptions of no cause or right of action and prematurity. These exceptions were also overruled. Plaintiff then filed an amended petition, whereupon defendant filed exceptions of no cause or right of action and prematurity to the amended petition. Both exceptions were overruled and judgment was rendered in favor of plaintiff in rule, awarding her alimony. From this judgment, defendant appealed. These proceedings were followed by all of the defendants filing separate answers to the suit. The answer of the defendant husband admits the allegations in paragraphs 1, 2, and 3, of plaintiff's petition, but specifically or substantially denies all other allegations in the original and amended petitions. He especially denies that the matrimonial infelicity is attributable, in any way, to his fault. He denies that he expressed regret for having married plaintiff. He denies that he was rough towards plaintiff or refused to speak to her; but charges that plaintiff refused to speak to him or to treat him civilly. He denies that he threatened to strike plaintiff or that he shook his fist at her. He denies that plaintiff ever paid a doctor or medical bill, but alleges that he paid all of these bills. He denies that he ever refused to get a doctor for plaintiff; but alleges that plaintiff would not have the doctor who had been his family physician, that she called in another doctor and that he paid that doctor's bill. He denies that he was cruel to his child or that he failed to provide for the home or that he cursed his wife and daughter upon their return from a picture show, and his answer to this paragraph of plaintiff's petition is as follows:

"Respondent denies the allegations contained in the eleventh paragraph of the petition, and especially denies that he had been advised of their going to the motion picture show; and, further answering, respondent shows that he was at that time employed as an inspector on the road, and that he had to leave home at a very early hour of the morning in order to get to his work in time; that petitioner and his daughter on this occasion, as on several previous occasions, over the remonstrances of respondent, returned home late at night, and, instead of entering the house quietly, made a great deal of noise for the purpose of awakening your respondent; that due to this provocation your respondent made the following remark, 'You should not make so much noise when you enter the house; you have no consideration whatever for me; it looks like a drove of animals coming in. If you do not do better, I will lock the door on you some night.'"

The plaintiff's petition alleges:

"That petitioner has social position, education, and refinement, and cannot longer endure and support the bad conduct of her husband."

The husband answers to this allegation as follows:

"Respondent, further answering, shows that the petitioner is well educated and refined in the proverbial sailor's language, and that she has used said language in cursing and abusing your respondent on many occasions."

The defendant husband, in reconvention, alleges that plaintiff neglected him; refused to prepare his meals, wash his clothes, or give him her company; that she cursed and abused him and his relatives; that she refused to visit or associate with his relatives, refused to have his daughter give him proper respect, refused to serve him as a wife or to bear children for him, refused to permit him to correct his daughter but permitted her, over his protest and remonstrance, when she was only 14 years of age, to receive and entertain men until late hours of the night, and that she scorned and ridiculed his repeated attempts to restore and maintain

proper marital relations with her. Upon these allegations he prays for a denial of plaintiff's demands and for a judgment, in reconvention, of separation from bed and board, for the custody of the minor daughter, for the dissolution and settlement of the community, for judgment against the community for $1,700, and for a judgment recognizing his sole ownership of certain alleged separate and paraphernal property.

The answers of the other defendants deny all the allegations in plaintiff's original and supplemental petitions, which attack the sales of property made to them by defendant A. N. Aucoin, and allege the bona fides of those sales. After issue was thus joined, the defendant husband was ruled into court to show cause why the allowance of alimony should not be increased. To this rule he filed an exception to the jurisdiction of the court, an exception of no right or cause of action, and the pleas of res adjudicata, lis pendens, and estoppel. All of these exceptions and pleas were overruled, and the trial on the merits resulted in the judgment and the appeal therefrom, hereinbefore mentioned.

The controlling issue in this case, that is, whether the wife had legal grounds for abandoning the matrimonial domicile, presents only a question of fact, and her right to legally demand the judgment she prays for in her petition is entirely dependent upon that fact being resolved in her favor.

[1] Plaintiff testified in her own behalf, and she offered the testimony of her daughter, Dr. De Gravelles, Mrs. Willie Aucoin, and Mr. C. J. Boatner; and she called the three defendants, Albert, Joe, and Theodule Aucoin, for cross-examination.

The witnesses called for the defendant were Dr. Brosser, Harry Wakefield, Winnie Thibodaux, Eugene Hill, Desire Bonvillain, Gus Fryoux, Sidney Barras, Jesse James, Joe Young, Theodule and Joseph Aucoin, and the defendant.

The record contains 234 pages of oral and 44 pages of documentary evidence. This, however, is not alarming, because all of the documents in the record, except a few unimportant letters and certified copies of the acts of sale which are attacked by plaintiff, are exhibits showing the various sums of money defendant sent to the plaintiff from Cuba and while he was employed elsewhere. As determining which of the spouses was most at fault as a disturber of their domestic felicity, these documents are only important to the extent that they show the defendant sent $3,000 of his earnings to the plaintiff during the period of that employment. In this connection it may also be said that only such parts of the oral testimony need be considered now as were offered to sustain or refute the grounds alleged in the pleadings for a judgment of separation from bed and board.

Some of the specific acts charged in the petition may be disposed of briefly, notably, the plaintiff's charge that the defendant refused to pay her doctors' bills. Both doctors testify that defendant paid their bills, and plaintiff, as a witness, admits that fact. As to the plaintiff's charge that defendant refused to provide proper necessities for the home, the documentary evidence shows that defendant sent plaintiff the greater part of his earnings when he was away from home, and the oral testimony shows that he provided his family with the prettiest and most inviting home in the neighborhood. Plaintiff herself admits this fact. The testimony also shows that plaintiff had an open account at T. Aucoin & Sons' store, where plaintiff could purchase anything and everything carried in the stock of that store; and, at the date of plaintiff's abandonment of the matrimonial domicile, defendant owed T. Aucoin & Sons $3,340 on that account. The testimony shows that plaintiff retained for her own use the entire revenue derived from the poultry

yard and from the sales of milk, and, whenever boarders were in the house, the plaintiff received for her own uses the entire sum paid by them for board and lodging. The charge that defendant was cruel to his child is not supported by any proof. When the case was tried, the child was 17 years of age, and the testimony shows that defendant had not chastised her once during her lifetime. On one occasion, when she was a small child, defendant threatened to correct her, but plaintiff interfered and defendant desisted. The charges that defendant expressed regret that he had married plaintiff and that he had shook his fist at her and threatened to strike her are not supported by any circumstance in the case or by any corroborating testimony. The plaintiff asserts these charges, and the defendant vehemently denies them. They are therefore not proven, and it is not necessary to further consider them.

This disposes of all of the grounds upon which plaintiff's demand for a separation is based, except the following: (1) Defendant cursed plaintiff and refused to speak to her. (2) Defendant would not visit plaintiff when she was sick. (3) Defendant would not take his meals at home. (4) Defendant would not get help for plaintiff.

The plaintiff and defendant each testify that, at times during their married life, they were cursed by the other spouse in unmeasured terms. The daughter corroborates her mother's testimony on this point, and, in her admissions on cross-examination, she corroborates, in part, the testimony of her father. For nine months or more before the separation, it does not appear that the spouses lived together as man and wife or were sociably inclined towards each other. Harry Wakefield, a disinterested witness, and a boarder in the house for about three months, says:

"Mr. Aucoin, from what I saw around there as long as I was there, well, he was just about staying there. That is about all."

This witness says that Mr. Aucoin's wife and daughter did not treat him respectfully, that, in speaking to witness and his wife, they called Mr. Aucoin an ignorant old fool and an ignorant old jackass; that defendant, on the contrary, never spoke of his wife and daughter except as any man should. He told witness that his wife was a good housekeeper, was very industrious, and his daughter was doing nicely at school. Witness says he did not hear the defendant curse while he boarded at his house.

It appears that the defendant did not enter the room where his wife was sick because he hated his wife's sister, and this sister was the constant attendant of his wife during her illness.

It appears that at times, especially on Sundays, defendant would dine with his mother and relatives. On other occasions he would get home late. When this occurred he would usually find his place set at the table, but plaintiff and her daughter would go to their room and defendant would get his own meal. In speaking of the treatment accorded the defendant by his wife and daughter when they dined together, Harry Wakefield testifies as follows:

"When Mr. Aucoin asked for something on their side of the table it was never passed. Either my wife, the inspector, or myself would have to pass it down the table. In other words, when he asked for bread and it was on their side of the table, one of us would have to pass it."

The charge in the petition that defendant refused to provide help for his wife appears to have grown out of an incident which occured in 1918. Mrs. Willie Aucoin testified that while her sister was sick, at that time, she asked her husband to get her a washwoman. He said that he would, but he neglected to do so. There is considerable evidence in the record showing that washwomen and servants were about the house and were secured by plaintiff as she desired them. It

appears that these servants were paid by plaintiff out of the money given to her by her husband or the money realized by her from the sales of poultry and eggs and butter and milk. There is no testimony in the record showing that defendant was requested to pay the servants or that he refused to make provision for their payment. The testimony shows that defendant is a hard-working, uneducated laborer. Society, dances, and picture shows had little attraction for him. He preferred, when his day's labor was ended, to seek his home and to retire early. The plaintiff was socially ambitious; she and her daughter frequented the neighborhood and Morgan City dances and motion picture shows. The defendant did not approve of these outings, and he became very hostile towards his wife's sister because this sister furnished the car and invited his wife and daughter to accompany her to these entertainments. The story of the domestic trouble in defendant's home is graphically told, in part, by plaintiff's sister, who testified as follows:

"The trouble would always start when I would go there. He cursed pretty often and fussed pretty often. I tell you he would fuss at her, and tell her he didn't care what they did, and didn't want them to come out with us."

This witness says that, during the 17 or 18 years of her sister's married life, she visited her practically every day. The testimony shows, and she admits, that her brother-in-law disliked her very much, if he did not actually hate her. But there is no evidence in the record that he displayed his animosity towards her otherwise than by avoiding meeting her.

We have read the record carefully, and from a consideration of all of the testimony offered in the case we have reached the deliberate conclusion that the plaintiff and defendant are each chargeable with acts of omission and commission towards each other, of mutual wrongs of a like character and proportional degree.

"The law which provides for a separation from bed and board in certain cases is made for the relief of the oppressed party, not for interfering in quarrels where both parties commit reciprocal excesses and outrages." Trowbridge v. Carlin, 12 La. Ann. 882; De Lalande v. Jose, 5 La. Ann. 33; Naulet v. Dubois, 6 La. Ann. 403; Castanedo v. Fortier, 34 La. Ann. 135; Amy v. Berard, 49 La. Ann. 897, 22 So. 48; Durand v. Her Husband, 4 Mart. (O. S.) 174.

[2] Where the spouses are guilty of mutual wrongs towards each other of the same character and so proportional that it is difficult to ascertain which party is mainly at fault, the courts will not interfere or grant relief to either. Werner v. Kelly, 9 La. Ann. 60; Thomas v. Tailleu, 13 La. Ann. 127; Dillon v. Dillon, 32 La. Ann. 643; Machado v. Bonet, 39 La. Ann. 475, 2 So. 49; Duhon v. Duhon, 110 La. 242, 34 So. 428; Ducros v. Ducros, 156 La. 1034, 101 So. 407.

The conclusions we have announced dispose of the case and leave the spouses where they have placed themselves. It is therefore unnecessary to consider the alienations of the realty and the sales of stock and personal property involved in the suit.

For the reasons assigned, the judgment appealed from is avoided and reversed, and it is now ordered that plaintiff's suit be dismissed; that the demands of defendant, as plaintiff in reconvention, be rejected; and that the community pay all costs.