*889
 
 ODOM, Justice.
 

 Mrs. Kreutz sued her husband for separation from bed and board on the ground of cruel treatment and outrages of such a nature as to render their living together insupportable. She prayed for custody of the in-' fant child of the marriage and for alimony. The husband, in answer, denied the charges of cruelty, reconvened, and asked that he be granted a separation from her on the same grounds which she set up against him, that is cruel treatment. He prayed for custody of the child. There was judgment rejecting the demands of both parties. The wife appealed.
 

 The trial judge had this wife and husband before him, as well as their respective witnesses, and reached the conclusion that neither was entitled to a separation. After reading the testimony, we are convinced that he made no mistake. Mrs. Kreutz says that her husband was guilty of a long series of cruelties toward her, beginning shortly after their marriage and ending on the child’s birthday, on August 2, 1932, when they finally separated. She says he cursed her, called her vile names, and on two occasions beat her, once about the 1st of September, 1931, and again on August 2, 1932. She called her relatives to corroborate her testimony that about four weeks after the birth of the child, she had bruises about her body, which she says resulted from blows inflicted upon her by her husband. The relatives did not see the blows inflicted, nor did any one else. The husband emphatically denies that he struck her on this occasion. Whether he did or not we do not know, and we can not know because she says he did and he says he did not. Her relatives say she went to where they lived on. this occasion and when she reached there she was much excited and that they saw evidences of blows. The testimony as a whole strongly indicates that the testimony given by the wife’s relatives concerning this, as well as other episodes, was much exaggerated.
 

 At any rate, the wife seems to have given slight consideration to the matter, as she lived with her husband for a year after.
 

 To illustrate the alleged brutal and inhuman disposition of her husband, Mrs. Kreutz says that on the third morning after her child was born, he ordered her to get up out of bed and cook his breakfast She is corroborated in this by the testimony of one of her aunts, who was there at the time and remained in the home for some ten days or two weeks. The husband denies this. He says he knew that his wife was not only very weak physically at that time but was in a precarious condition; that the physician who was attending her advised him to procure the services of a professional nurse, as complications had set up and that it was necessary to use extra precautions lest the worst might happen. He procured the services of the nurse, who was present that day. Under these circumstances, and no one denies that they existed, it is unbelievable that the husband made such demands of his wife. If it be conceded, as the wife says, that her husband is instinctively brutal and inhuman, it is not likely that he ordered her to do something which he well knew she was physically unable to do. And yet, both the wife and her aunt say he made such a demand. Furthermore, this aunt was present for the purpose of doing what she says the husband de
 
 *891
 
 manded that his wife do. All this seems unreasonable. Such testimony as this causes us to doubt the sincerity of the wife as well as her relatives.
 

 Mrs. Kreutz says that her husband began to curse and abuse her soon after their marriage. Again the husband comes forth with a flat denial. He says his wife was always given to outbursts and was impetuous and quarrelsome. He called as witnesses of that fact his sister and her husband, with whom the couple lived during the first six months of their married life. This sister and brother-in-law of the husband say that never during that six months did they observe any misconduct on the part of the husband toward his wife. On the contrary, they say she frequently quarreled with her husband and on several occasions left him and went home to her relatives. The wife admits that she left her husband five times during the first year of their marriage. She and all her relatives say the husband was at fault. He and all his relatives say the fault was all hers. For every alleged wrong done her by her husband, the wife had at hand a relative to prove it, and likewise the husband was able to produce a witness in the person of a relative of his to prove every alleged fault of his wife. The families seemed to have been pitted against each other and the members of them were loyal to their side.
 

 Coming now to the climax, we find the couple engaged in a fight on the baby’s first birthday, August 2, 1932. The wife says that on that occasion, her husband, while the two were seated at the dinner table, struck her with his fist and knocked her “almost senseless” ; that he then caught her, dragged her through the living room and the hall and out to the front porch and tried to throw her off, and would have succeeded but for the interference of neighbors. The testimony leaves no room for doubt that there was a fight on this occasion. The neighbors witnessed what transpired on the porch and heard the wife scream while in the house. The husband admits that he dragged his wife from the dining room to the porch and that he slapped her with his open hand. He says he did so because while they were seated at the dining table, she provoked a quarrel, became enraged about a trivial matter and threw a salad bowl at him, whereupon he attempted to get his clothes preparatory to leaving the place, and that she thereupon jumped on him and bit him twice, once on the shoulder and once on the arm. The wife admits that she bit her husband as he says, but says that she did so in self-defense, because he had hold of her dragging her. She denies that she threw the salad bowl at him, but says, “He struck me in the face right here (indicating). In my excitement, when I went to get up from the table, I had some salad in a big bowl and my hand — I accidentally put my hand into the salad and it slipped to the floor and broke the dish.”
 

 Mrs. Kreutz says that after the affair at the table, she went into the bedroom and while there thought of a pistol which she took and carried to Chester Terry, a neighbor, fearing that her husband might get'it and “do something” to her and the baby. Mrs.. Brothers, defendant’s sister, says Mrs. Kreutz told her she intended to shoot her
 
 *893
 
 husband. If she intended to shoot him at the time she got the pistol, it is clear that she soon recanted, for she handed the gun to Terry.
 

 Mrs. Brothers, defendant’s sister, and her husband arrived soon after the affray. They say that upon their arrival, Mrs. Kreutz at-, tacked Mrs. Brothers and that Mr. Brothers had to “pull her (Mrs. Kreutz) off his wife.” Mrs. Kreutz denies this. Defendant and his witnesses say that when Mr. and ^Mrs. Brothers attempted to leave the premises in defendant’s car, Mrs. Kreutz threw bricks and stones at them. She and her witnesses say she did nothing of the kind, for there were no bricks or stones there. Mrs. Kreutz was asked, “Did you throw anything?” she said, “I threw a vanity ease.”
 

 After all this, Mrs. Kreutz’s body bore evidences of the fracas. She had marks and one “brush wound” on her. A physician and her relatives so testified. But whether these were caused by a deliberate beating of her by her husband or were the result of his dragging her through the house is not certain. Furthermore, whether Mr. Kreutz slapped his wife, as he says, because she threw the salad bowl at him or whether she threw the salad bowl at him because he slapped her, as she says, and whether he caught and dragged her because she bit him or whether she bit him because he caught and dragged her, it is impossible to say. As to this, they are the only witnesses. They flatly contradict each other.
 

 This last quarrel, which resulted in a fight and an immediate separation, arose over a trivial matter. Mr. Kreutz bought a birthday present, consisting of a “knife, fork and spoon set,” for the baby without consulting his wife. Mrs. Kreutz was offended because she was not consulted and she told her husband so at the dinner table. The trouble started from this. It could and would have been avoided if the parties had been discreet and had treated each other with proper consideration.
 

 The trial judge saw all the witnesses and heard them. He refused to grant to either pai’ty the relief prayed for. We think he made no mistake. The defendant is not a wife beater as she and her relatives would have the court believe. He admits that he struck her with his open hand but he says he did so only after she threw the salad bowl across the table at him and broke it into bits. If she did that, it must be admitted that he acted under great provocation and excitement. He evidently did not intend to hurt her badly, because if he had, he could have done so, he being of large and she of small stature. The x-eeord, we think, warrants the holding that the wife made the first assault. She admits the salad bowl incident, but says she broke it only after he had knocked her “almost senseless” with his fist. It was she who first became angry. This is admitted, and that being true, it is highly probable that defendant’s version of the affair is correct.
 

 Our conclusion, after reading the recox'd through, is that these parties were both at fault and guilty of mutual wrongs. Under such circumstances, neither is entitled to the relief sought. Snell v. Aucoin et al., 158 La. 767, 104 So. 709; Weiser v. Weiser, 168 La. 847, 123 So. 595; McKoin v. McKoin, 168
 
 *895
 
 La. 32, 121 So. 182; Artigues v. Artigues, 172 La. 884, 135 So. 665, 76 A. L. R. 981.
 

 The judgment is affirmed.
 

 ST. PAUL, J„ absent.