## No. 9807.

MRS. ELIZABETH MACK, WIFE, VS. ALEXANDER STUART HANDY, HUSBAND.

|    |      |
|----|------|
| 39 | 491  |
| 45 | 284  |
| 45 | 1366 |
| 39 | 491  |
| 49 | 244  |
| 39 | 491  |
| 110| 426  |
| 39 | 491  |
| f117| 730 |

A demand for divorce, on the charge of adultery, may be cumulated with a demand for a separation from bed and board.

The simple confession, by one of the spouses, of adultery, is. of itself, insufficient to authorize the dissolution of the marriage. Additional facts must be shown to justify the decree.

Possession by the accused party, of suspicious mixtures, which were taken by physicians and druggists to have been remedies for some venereal disease, is circumstantial evidence, that may be considered in connection with other facts that are proven in the case; but not sufficient to establish his guilt.

Proof of intemperance *since* the filing of the suit may be administered, not to prove a substantive cause, but to show a continuing habit.

Proof of gambling is admissible in support of the charges of squandering money and debauchery.

What are habitual intemperance and excesses which render it *insupportable* for a complaining *wife* to longer continue marital relations with her husband, is a question for the court, and *not* the party, to decide.

Habitual intemperance is the constant indulgence in such stimulants as wine, whisky, or brandy, whereby intoxication is produced.

It is not their ordinary *use* whereby drunkenness *may be* occasionally produced; but the *abuse* of them, so long continued that the habit becomes fixed and confirmed.

The evident object of the separation of husband and wife from bed and board was to afford the offending party ample time and opportunity for reformation; and to the party complaining, to understand the situation and determine the propriety of making a reconciliation.

The patience and forbearance of the wife during her long endurance of the cruel treatment of her husband, while entertaining hope of his reformation, should not be mistaken for condonation or reconciliation. It serves rather to strengthen than to weaken her cause of action.

APPEAL from the Civil District Court for the Parish of Orleans. *Houston, J.*

*Nicholls and Carroll* for Plaintiff and Appellee.

1. Where a plaintiff, in a suit for divorce, declares upon a double set of allegations, the first of which sets, if proved, would entitle her to a divorce, and the other (without the

first) would entitle her to a separation from bed and board, prays for an absolute divorce, "and for all such other and further relief and decrees in the premises as to law, justice, right and equity will comport, and the nature of the case and the evidence will authorize, and for general relief," the court can grant either an absolute divorce or a separation from bed and board, as the law and the evidence will justify. The less is included in the greater. 10 Ann. 664, Ledoux vs. Boyd.

2. Under an allegation by plaintiff, that the defendant was habitually intemperate, that his habits were fixed and continuing, plaintiff had the right to show the continuance of the habit beyond the date of filing the petition.and up to the day of trial, the object being not to make use of the particular facts shown, as substantive acts for a cause of action. but in aid and corroboration of the allegation of the character of the habit.

3. Where a plaintiff, in her allegations, declares that she is unwilling, on account of the indecency of certain facts, to specify them particularly in the petition, but offers to do so if required, and the defendant suffering a judgment by default to be taken, objects to evidence of particular facts on account of generality of averment. and it is shown by commissions taken out and proceedings had, that the defendant was fully advised of the particular facts which would be proved, and the court and the plaintiff's counsel offer to grant all time which might be asked, and the defendant asks for no time, and calls for no bill or specification of particulars. the testimony is properly allowed to be introduced. 6 M. 649 ; 4 N. S. 277; 7 N. S. 354; 17 L. 238; 5 Ann. 531, 673; 9 Ann. 119, 254; 10 Ann. 528; 12 Ann. 795; 37 Ann. 800.

4. The admissions of a husband are not sufficient *per se* to authorize a divorce or separation, but they are admissible in evidence, and when they are free from suspicion of collusion and corroborated, they are evidence of the highest kind. Matchin vs. Matchin, 6 Barr, 332, 337; Bishop on Marriage and Divorce, Vol. 2, § 242, and note, §343, *et seq.*: admissions do not require to be made under oath, nor must they. to be admissible, have been made prior to the filing of the suit.

5. A defendant cannot introduce his own letters in evidence, particularly when it is shown that they were written with direct reference to being used in his own behalf in the suit.

6. There is no necessity for direct evidence of adultery. It may be proved by circumstantial evidence, of the weight and force of which the court is to judge. There is no necessity for proving the particular time, or place, or person with whom committed ; it is the fact of adultery, not the particulars thereof, which are important. Bishop, §§ 610 *et seq.*, §§ 614, 632, 633, 634.

7. Special facts may be introduced to prove adultery, and also may be used to evidence in themselves acts properly characterized as outrages and cruel treatment.

8. Where a defendant in a divorce suit sets up " condonation," he must prove it. Condonation is forgiveness under "*a condition.*" Even if condonation were shown, the condonation would cease if the condition were shown to have been violated. The condition is future good conduct and future conjugal kindness. Bishop. Vol. 2, §§ 33, 34 and 53 *et seq.*

9. Acts which, in a husband, might be held as a condonation, are not so held in a wife. Bishop, Vol. 2, §§ 44, 49, 51, 52 and notes.

10. Submission must not be confounded with condonation—" the forbearance of a wife and her patience in bearing with the cruel treatment of her husband, in the fond hope of his reform, and of his being restored to her as a kind husband, and to her children as an affectionate father. until at last she sees that all hope is lost, must not be confounded with, or construed as, condonation, or reconciliation, as contemplated in our laws and expounded in our jurisprudence." 34 Ann. 306, 614 ; 23 Ann. 422 ; 36 Ann. 679 ; Bishop, Vol. 2, §§ 51 and 52 and notes.

11. There is no condonation where the wife has been kept from acting by threats of taking away her children to another State, and from repugnance to the exposure of family matters and the scandal of a divorce suit.

Mack vs. Handy.

12. There is no necessity that the acts violative of the condition of a condonation should be *ejusdem generis* of the act condoned; the violation of the condition *sets the whole matter at large*. If the act alleged to have been condoned was a good cause for a divorce, it can be used again as a cause of action for a divorce, although the subsequent acts violative of the condition would, in themselves and by themselves, have been only cause for separation from bed and board. Dalloz and Verge, under Art. 273, C. N., Nos. 10 and 11. Reg, 6, Juin, 1853, D. P. 53. 1. 244; Bishop, §§ 53, 54, 55, 56, 57, 58, 59, 60, *et seq*.

13. The law, in making "habitual" intemperance a cause for separation, necessarily presupposes the continuance of marital relations for an undefined period. The precise time when these habits become of such a character as to be insupportable must, of course, rest with the powers of endurance of the wife and the facts of the case. She has to determine when she can no longer stand the situation. Bishop, §§ 51, 52.

14. The evidence in this shows not only habitual intemperance on the part of the defendant for years back, but an almost constant intoxication during the whole of his last stay in New Orleans, and shows that he left home on that last day (since which time the parties have not met) in a beastly state of intoxication.

15. Negative testimony amounts to nothing as against positive, overwhelming affirmative, testimony of intemperate habits; partial "rests" to recover from attacks of sickness resulting from drink, or even partial rests without sickness, amount to nothing. A man whose business causes him to be absent from his wife for several months, and who might conduct himself properly when absent from her, but who should select as the precise periods for continued intemperance the only times when himself and his wife are thrown together, could scarcely point to his conduct when away from her as an offset to his bad conduct when with her. So far as husband and wife are concerned, the periods of their being together would be the determining periods for his good or bad conduct. It is submitted that the evidence in this case establishes affirmatively, however, continued habits of intemperance long before, up to and down to, the very trial of this case, of character such as to justify the prayer of plaintiff's petition.

## C. McRae Selph for Defendant and Appellant:

The prayer of the petition determines the cause of action, and where it is for a divorce from the bonds of matrimony, the allegations of the petition must be of a legal character to support that prayer, and such as to authorize the introduction of proof to support the allegations.

The charges (allegations) to support the two classes of divorce, viz: from bed and board, and from bonds of matrimony. are not only distinct and unconnected charges, but lead to distinct issues and decrees, and it is not proper to join both proceedings in one action. Bishop, vol. 2, §§ 327, 329.

If the prayer is for an absolute divorce. the further prayer, "for all such other and further relief and decrees in the premises as to law, justice, right and equity will comport, and the nature of the case and the evidence will authorize, and for general relief," is not such a prayer as will authorize the court to decree a separation from bed and board when the special relief prayed for is for a divorce from the bonds of matrimony.

Evidence which would support an action for "separation from bed and board," is improperly admitted in an action for a divorce from the bonds of matrimony.

Evidence of actions and conduct of the husband after the filing of a petition for a divorce, is inadmissible.

Allegations of adultery must be in direct terms. Their forms must, to be adequate, be accompanied by such further description of time, place and circumstances, and the like, as shall apprise the defendant of the particular transaction to which he is to respond. Bishop, vol. 2, §§ 329, 604.

If defendant answers, without excepting to the vagueness of the allegations, it is no waiver

of his right to object to the evidence. The failure to ask for a bill of particulars of the adultery will not supply the defect of a more general allegation. Bishop, vol. 2, §§ 606, 607.

Reconciliation extinguishes the cause of action. But if a subsequent cause arises, the party can make use of the first in corroboration only. Civil Code, 152, 153. And reconciliation is presumed when husband and wife live and cohabit together.

The subsequent causes must be of the same nature as the first, to enable the plaintiff to make use of the first.

"The mere acknowledgement of the truth of the facts alleged, made by either party, even in an authentic act, can never be deemed sufficient foundation for a decree of separation from bed and board, a fortiori, of a divorce." 16 L. 26.

The proof of "habitual intemperance" must be sufficient to warrant the court, not the plaintiff, in concluding that the "nature" of the "habitual intemperance is such as to render their living together insupportable."

The opinion of the Court was delivered by

WATKINS, J. Plaintiff sues her husband to obtain against him judgment of divorce, and in the alternative a separation from bed and board.

Her petition is elaborate, and the charges and specifications are quite numerous.

They are to the effect that for several years past defendant has been guilty of "habitual intemperance" and "excesses, cruel treatment and outrages towards her; that he has cursed, abused and insulted her without cause, in public and private; and that such habitual intemperance, ill-treatment and excesses are of such a nature as to render their living together insupportable."

It also charges that defendant has not supported her and her children properly and decently; but that he has spent his means in riotous living, dissipation and debauchery in the company of disreputable associates and lewd and abandoned women.

That his general conduct, habits and manners are of such character that she is, and has been, in constant fear of herself and little children sustaining great bodily harm at his hands.

She specially charges that he has been guilty of repeated adulteries.

The defendant pleads the general issue; no cause of action,—because petition shows that whatever causes she may have had have been condoned and extinguished by *reconciliation;* and finally that plaintiff has been improperly influenced to institute this suit, because he desired to remove to Canton, Miss., where he could better support and take care of them.

I.

In the lower court plaintiff's demand for a divorce was rejected, but the demand for separation from bed and board was sustained; and the

Mack vs. Handy.

defendant alone appeals.   But, in in this Court, the plaintiff has answered the appeal and prayed for an amendment of that decree, to the end that she have judgment of divorce.   In this manner all the issues raised in the lower court are presented here for decision.

On the trial defendant excepted to the ruling of the judge *a quo* permitting the introduction of evidence in support of the charge of adultery, on the ground that the allegations of plaintiff's petition were too vague and indefinite to admit of proof under them.

An examination of the petition will show that this vagueness and generality of averments, in respect to this charge, was intentional and was actuated by a pure and proper motive, to avoid the recital of *painful and disgusting details.*

The petition clearly intimates to the defendant and the court, her entire willingness to spread them upon the record, if deemed necessary or desirable.

Before the case came on for trial, and prior to issue being joined, the plaintiff propounded interrogatories to Dr. Priestly, of Canton, Miss., and a well known druggist of this city, in which the character of the evidence she would rely upon, was clearly indicated; and, contradictorially with him, obtained a commission to obtain their answers. In addition, the judge *a quo* in passing upon his objections to the evidence, stated that if he was taken by surprise, he would allow him ample time to procure evidence in rebuttal; but defendant failed to avail himself of the privilege.

We fail to see in what respect the defendant has had injustice done him.

II.

Defendant further objects to any evidence being introduced for the purpose of establishing cruel treatment, habitual intemperance and other charges in support of a decree of separation from bed and board.

1st.  Because it is not specifically claimed in the prayer of the petition.

2d.  For the reason that a divorce and separation from bed and board cannot be demanded on one and the same suit.

Our predecessors decided both objections in the negative.   10 Ann. 663, Ledoux vs. Her Husband.

In 7 La. 282, Soovi vs. Ignogoso, the Court held that "a suit for a separation from bed and board, within the terms and meaning of the law, is an action of divorce.   *   *   *

"The action of separation from bed and board, in *all* cases, *leads* to a divorce *a vinculo matrimonii.*"

The Code expressly provides that "in the cases excepted above, a

judgment of divorce may be granted in *same* decree, which pronounces the separation from bed and board." R. C. C. 139.

One of the exceptions_referred to is adultery.

The objections were properly overruled.

### III.

The defendant further excepted to the introduction in evidence of certain admissions of his as proof of adultery.

It has been held that in such suit as this " the law requires more than a *simple confession* of one of the parties to dissolve the bonds of matrimony between them; *facts* must be shown, and *such* facts as will authorize a court of justice to declare that the interference of the law is absolutely necessary." 16 La. 27, Harmon vs. McLeland.

Courts may, without impropriety, entertain such proof, in corroboration of other proven facts, from which adultery may be inferred, but not as substantive evidence.

Such proof is insufficient of itself to convict the defendant.

### IV.

Possession by the defendant of suspicious mixtures, which were taken, by druggists and physicians, to have been a remedy in use for some venereal disease, is circumstantial proof insufficient to make out a case against him. There is a possibility that it may have been prepared and in use for a different purpose or disease. It is not certain that it was his, or in use at any time by him, though the indications point that way. But these are circumstances that are to be and have been considered, in connection with others, in deciding the points.

The soiled linen may be referred to some other cause or trouble, such as piles, tumors, boils, etc. True it is, that no specific act or fact has been proven with that degree of certainty that the law requires. And there is in the evidence nothing in time, place or circumstance to connect those suspicious indications with the defendant's confessions. In fact, his statement, taken as a whole, does not admit *criminal conversation* with any one.

From the evidence it appears that the suspicious indications appeared in 1877 and 1878, and were continued in 1879 and 1880, and again in 1882, from time to time during those several years. But during all these years the plaintiff and defendant resided together and lived as man and wife. In November, 1879, a son was born of their marriage, and in August, 1881, a daughter. They are shown to be perfectly healthy, bright and intelligent children.

It seems quite impossible that defendant could have led the dissolute life attributed to him during these years, and that he should have

been so frequently under treatment for venereal ailments, without contributing it to mother or children.

In this particular the judgment rejecting plaintiff's demand was correct.

## V.

Objection was urged by defendant to the introduction of proof of intemperance *since* the filing of the suit. The judge *a quo* permitted it; not to show a *substantive cause,* but a *"continuing habit."* That was correct.

He urged further objection to proof of his gambling, on the ground that there was no allegation justifying it; but the court below permitted it to be introduced in support of the charges of "squandering money and debauchery." In this, his ruling was correct also.

A careful reading of the evidence in this large transcript, satisfies us that the defendant has been addicted to dissipation and drunkenness during a series of eight or ten years.

The proof shows that he was a traveling salesman, professionally, and that the theatre for his operations was the State of Mississippi. His parents resided at Canton, Miss., and died there. He has brothers who still reside and are engaged in business in that town.

He married the plaintiff in this city in 1874, and for several years thereafter he represented as drummer several responsible houses. His business qualifications appear to be fair, and of such a character as to have enabled him, with prudence and economy, to have supported and maintained his wife comfortably; but from the evidence it may be fairly assumed that he spent the most of his means in gambling, dissipation and riotous living.

One of his brothers states that he was known to have been a "drinking man" before his marriage. A sister testifies to his being frequently drunk since his marriage, and that, at such times, he would abuse and mistreat the plaintiff.

Other witnesses who, from the close and intimate relations they held with his family, must have been very intimately acquainted with his habits, state that defendant very frequently came home late at night and very drunk, and on such occasions was boisterous, abusive and often obscene in the presence of his wife and family.

Two witnesses detail numerous acts of defendant's cruelty and unkindness to the plaintiff; and on some occasions when she was sick, and on one or two occasions soon after her confinement.

The phrase "habitual intemperance" scarcely requires an interpretation; it is easily understood. It means the custom or habit of getting

32

drunk. The *constant* indulgence in such stimulants as wine, brandy and whisky, whereby intoxication is produced. Not the *ordinary use*, but the *habitual abuse* of them.

The *habit* should be *actual* and *confirmed*. It may be intermittent. It need not be continuous, or even of daily occurrence.

Defendant has been habitually intemperate for a great many years.

It seems to have been his habit, on all occasions whilst in this city, and at his home, and with his family. On one occasion he had an attack of *delirium tremens*. He frequently staid out all night, without advising his family of his whereabouts; but when he did return, he gave undoubted evidences of drunkenness and debauchery.

It is quite impossible to give, in detail, even the salient facts adduced on the trial in the court below, in support of the grave and serious charges against defendant. Suffice it to say that, to our minds, they are clear, cogent and conclusive. They were to the judge *a quo*, and we concur in his conclusions.

The plaintiff is a lady of taste, refinement and culture, and accustomed to the amenities of good society.

The very idea of coercing her to continue her *marital* relations with the defendant, under the circumstances detailed, is shocking to our sense of justice and morality. We feel no hesitancy in deciding that the habitual intemperance and excessess of defendant, and his ill-treatment of the plaintiff, were such as to render their longer living together as man and wife insupportable to her.

And this is said with due regard for the time-honored rule that courts should not lend their aid to effect the separation of spouses, especially when there is issue of their marriage, except in *extreme* cases. But in a case like this the dictates of good morals, good breeding and Christian charity require that the tie that binds should be severed. The separation will not be necessarily irrevocable. When a year shall have elapsed, and the plaintiff and defendant have had time and opportunity for reflection, he may have changed his career and become a sober and orderly citizen, and she may feel willing to resume marital relations with the father of her children, condone all past offenses, and unite her efforts with his renewed exertions to achieve the happiness both had so nearly lost.

## VI.

The evidence does not establish such *reconciliation* as the Code contemplates, as extinguishing the cause of action.

The plaintiff was possessed of no means or home of her own.

Her mother had none.

State ex rel. Raymond vs. Judge.

The defendant relied solely upon his own exertions to earn a livelihood for himself and family.

She had no alternative but to remain in *his* home and *endure*, as best she could, through all those years, his habitual intemperance and excesses, for the sake of their little children.

This heroic endeavor serves rather to *strengthen* than weaken her cause of action.

The language of this Court in Terrell vs. Bowman, 34 Ann. 306, is strictly applicable. "The forbearance of a wife and her patience in bearing with the cruel treatment of her husband in the fond hope of his reform and of his being restored to her as a kind husband, and to her children as an affectionate father, until at last she sees that all hope is lost, must not be confounded with or construed as condonation or reconciliation as contemplated in our laws and expounded in our jurisprudence."

Judgment affirmed.