THOMPSON, J.
Plaintiff sues her husband for separation from bed and board on the statutory ground of cruel treatment which renders their longer living together insupportable. The specific acts of cruelty charged against the husband' are that during the month of June, 1919, he pointed a revolver at the plaintiff and threatened to take her life; that about May 1,1920, while plaintiff was in the discharge of her household duties, her husband, without any cause or provocation, attempted to choke her, and abused and cursed her, using indecent and vociferous language; that on May 16, 1920, he left the matrimonial domicile, and in about two weeks returned, and again without any cause or provocation abused, assaulted, and choked petitioner in the presence of petitioner’s daughter and her friends, whereupon petitioner withdrew from the matrimonial domicile, and has not since resided therein.
Defendant answered, denying the acts of cruelty charged against him, and specially denied that he ever choked his wife or pointed a pistol at her, or that he ever abused, cursed or threatened to kill her. There was judgment rejecting the plaintiff’s demand, and she brings this appeal.
The real cause which brought about the differences between the husband and wife and which prompted the bringing of this suit does not clearly appear from the evidence. That there were elements which disturbed the conjugal peace and harmony between the parties we have no doubt. The plaintiff claims that her husband made unnatural demands on her; demands which were contrary to both divine and human law and abhorrent in the extreme to all sense of decency and morality. And she would have it appear that her refusal to comply with such demands was the cause of her husband’s abusive and threatening conduct towards her. On the other hand, the defendant positively denied the imputation and accusation of his wife, and asserted that whatever troubles existed between them arose from his objection to the female company which she kept and the atmosphere with which she surrounded herself and in which she was bringing up their young daughter. In this situation, the plaintiff not being corroborated and in face of the positive denial of the husband, it is clear that the plaintiff has failed to establish the truth of the shocking charge she lays against her husband. The district judge did not believe it, nor do we. The only evidence which in the least tends to corroborate the plaintiff in accusing her husband of pointing a pistol at her on several occasions and of threatening her life is that of the young daughter, who was 11 years old at the time of the occurrence to which she testified took place, and 13 years old at the time she gave the testimony. This young daughter says that her father worked at night, and that she usually slept in the bed with her mother, and that her father, when he would come home in the early morning, and while her mother was dressing, would get the revolver . out of the dresser drawer and put it to her mother’s head; that she frequently saw him do this, and that she would jump between them and would “holler,” and her father would put the gun back in the drawer. When asked why her father pointed the pistol at her mother’s head, she answered that she did not know; that he would always say something to her mother in a whisper which she did not hear. She testified that she frequently met her father, and would go out with him, after *297 the separation between her father and mother, and that she loved him. The district judge in his reasons for judgment, after summing up the evidence, says that the story of the wife and little daughter as to the threatening pistol episodes was absolutely incredible. Our study of the testimony has not enabled us to reach a different conclusion. If it be true that the défendant did on various occasions point a pistol at his wife and threaten her with bodily harm, the manner in which it was done, as appears from the testimony, is by no means convincing that he meant to do his wife any harm. The incidents appear to have been more a matter of jest, rather than of serious intention to injure his wife. The wife thereafter continued to live with her husband, and while away on a visit wrote her husband pleasant and endearing letters and cards. This action, on the part of the wife, is inconsistent with any serious or genuine belief on her part that her husband intended to commit any violence upon her.
The act of the husband which is the more seriously stressed by plaintiff is the ■'•choking incident,” which is said to have taken place in the kitchen on the last Sunday in May, 1920, and which is said to have been witnessed by tbe little daughter and a young girl playmate of the daughter, and also by a young lady roomer at the house. The testimony pf the wife, the two little girls, and the young lady describes' the choking with practical unanimity in every minute detail. It is, in substance, that the plaintiff was in the kitchen, cooking the noon meal, the defendant came through the house from the front, and went into the kitchen and sat down to the table and said, “This is my house, and I am coming back to live with you,” whereupon his wife said, “No; you are not; you left and you must stay out;” and the husband replied, “I am going to eat dinner with you;” that he ordered the children to leave the room, and then grabbed the plaintiff by the throat and choked her, that she screamed for her daughter, and the three who had left the kitchen returned, and the husband then left the house. The defendant’s account of his visit to the kitchen and what happened is entirely different from that of the plaintiff and her three young witnesses. 1-Ie testified that when he went to .the-house he met his little girl and kissed her, and asked her for her mother, and the girl said she was in the kitchen, when the defendant said;
“ ‘Are you there?’ and then she commenced to abuse me, and everything she could think of, what she was going to do, and she said that she did not want me there, and I says, ‘Well this is my house, and I guess I ought to be able to stay for a few minutes anyhow,’ and I took her by the wrist and kissed her, and I put my arm around her and started to pull her down to kiss her again, but I did not kiss her;”
He further said that when he grabbed his wife by the arm, she called to her little daughter, and said, “Come here, Ethelda;” that the other little girl and the young lady did not return into the kitchen after having left at his request, and did not see what occurred. The defendant appears to have been a hard-working man, and devoted to his wife and daughter, and amply provided for them in so far as his earnings would permit. His wife’s sister informed him as to the character of the company with which his wife was associating, and he had just cause to complain at her conduct. After all, this is more likely the cause which brought about the domestic broils. The district judge gave credit to the testimony of the defendant, and stated that he did not believe the choking story. In view of the conflict in the evidence, we are constrained to defer to the opinion and judgment of the trial judge, who had all of the witnesses before him, and who was in a better position to determine the worthiness or unworthiness of the witnesses than we are from the record.
The judgment appealed from is therefore affirmed, at appellant’s costs.