O’NIELL, Chief Justice.
 

 The plaintiff is appealing from a judgment rejecting his demand for a decree of separation from bed and board. He alleges in his petition that his wife was guilty of habitual intemperance and of cruel treatment and outrages towards him, and that her habitual intemperance and ill-treatment of him were of such a nature as to render their living together insupportable. The wife, answering the suit, denied the accusations, and set up a re-conventional demand for a decree of separation from bed and board on the ground of cruel treatment on the part of her husband. The judge of the civil district court rejected also the defendant’s reconventional demand. She did not appeal from the decision or answer her husband’s appeal.
 

 The parties to the suit were married only four months and eleven days when the suit was filed. The plaintiff specifies four occasions on which, as he avers, his wife became intoxicated. Two of the occasions were drinking parties, at night clubs. On both occasions the husband was present and drank with his wife and the other members of the party. The first of the drinking parties was had one week after — and the second was had one month after — the marriage took place. The
 
 *495
 
 third incident which Mr. Broderick complains of occurred about three months after the marriage. He returned home from his work about 10 o’clock at night and was unable to enter his apartment because his wife had locked the door from the inside and was so sound asleep that he could not arouse her by knocking on the door. He entered the apartment through a transom, and, according to his testimony, he found his wife asleep on the bed with her clothes on and with' an odor of intoxicating liquor on her breath. She denied that she was intoxicated, and she accounted for her being so sound asleep by the fact that she was naturally a very sound sleeper, and that she had come home fatigued from her work that night. The fourth and last of the occasions which Mr. Broderick complains of was a dinner party at his apartment, at which Mrs. Broderick’s sister and her brother and his wife were the guests. Whiskéy highballs were served before dinner. Every member of the party partook of the' highballs, — but only moderately. After dinner — sometime near midnight — Mr. and Mrs. Broderick quarreled; and the guests departed. Mr. Broderick accused his wife of being intoxicated, and she resented the accusation. She and the guests testified that she was not intoxicated. After the guests had departed. the quarrel between. Mr. and Mrs. Broderick continued, and became so intensified- that she suddenly left the apartment and went to the residence of a lady friend in the next block, where she spent the remainder of the night. It was then nearly, 1. o’clock, on- a Sunday morning. On that day Mr. Broderick consulted an attorney, for the first time, on the subject of obtaining a divorce; and on the next day, Monday, he filed this suit.
 

 The testimony of Mr. Broderick, that his wife became intoxicated on one— and perhaps both — of the drinking parties at the night clubs, is corroborated by the testimony of the two other members of each of the parties, and is denied only by Mrs. Broderick. On the other hand, the denial of Mrs. Broderick that she was intoxicated on the occasion of the dinner party in her apartment, — when she and her husband quarreled and separated,— is corroborated by the testimony of the three guests. If Mrs. Broderick did become intoxicated on two or three of the occasions referred to in Mr. Broderick’s petition and in his testimony, that would not constitute habitual intemperance. Mack v. Handy, 39 La.Ann. 491, 2 So. 181. Besides, according to article 138 of the Civil Code, habitual intemperance — like ill-treatment' of one of the spouses towards the other — is not a just cause for a separation' from bed and board unless “such habitual intemperance, or such ill treatment, is of, such a nature as to render their living together insupportable”. And the question whether the habitual intemperance, or ill-treatment, in any given case, is of such a nature as to render the living together of the parties to the marriage unbearable, — or “insupportable”, as the Civil Code has it, — is a question for the court, and not for either of the parties, to decide. Mack v. Handy, 39 La.Ann. 491, 2 So. 181. In deciding that question, in any given case, the court must consider
 
 *497
 
 the habits of the complaining party, and his or her conduct towards the other party to the marriage. For a period exceeding five months before Mr. Broderick married the present defendant he was going out with her regularly at nights, sometimes to night clubs and sometimes to picture shows, and he knew the extent of her drinking, because in fact he drank with her; and he continued thus to condone her drinking until the morning of the very day before he sued her for a decree of separation because of her drinking. We do not mean by this that Mr. Broderick approved of his wife’s drinking to excess. But the fact is that, by accompanying her on drinking parties and bjl drinking with her, he encouraged her to drink, knowing, as he contends, that she was liable to become intoxicated. A man who drinks with his wife on every drinking party that she attends should not sue her for a separation from bed and board on the ground that such drinking constitutes habitual intemperance, of such a nature as to render their living together unbearable, without first discontinuing drinking with his wife, and without giving her a sufficient warning to reform her conduct in that respect.
 

 The testimony of the witnesses for Mrs. Broderick leaves no doubt that she was not guilty of habitual intemperance during her marriage. Her profession or occupation is that of a stenographer. Although she is only twenty-seven years of age, she has been employed as a stenographer for about ten years. During her marriage she was earning $100 a month, as stenographer for an important institution, called Union Station Survey; and she never missed a day from her work. In addition to that employment she worked for an architect, or a consulting engineer, three evenings in each week, for several hours after her' day’s work was done. The architect or consulting engineer testified that the work which Mrs. Broderick did for him was of a difficult type of work, mostly tabulating figures, and requiring skill and accuracy; and that her work was very satisfactory. He testified that Mrs. Broderick had worked for him as stenographer regularly during the daytime for nearly a year before she was married, and that he had never known of her ever taking a drink except on one occasion,, when she and Mr. Broderick took a drink with him, the consulting engineer. The members of Mrs. Broderick’s family, and the maid who attended to her apartment and who saw her every day, and her intimate lady friend who lived one block from her apartment, and who saw her often, all testified that Mrs. Broderick was not given to habitual intemperance, or excessive drinking.
 

 Mr. Broderick’s charge that his wife was guilty of cruel treatment and outrages, of such a nature as to render their living together insupportable, has reference particularly to his accusation that in the drinking party in the night club, a month after the marriage, Mrs. Broderick cursed him and threw beer in his face, and that when they were returning home that night- she kicked and broke a window of the automobile. There were only two other members of the drinking party, namely, a cousin of Mr. Broderick and the
 
 *499
 
 cousin’s husband. They corroborated the testimony of Mr. Broderick with reference to the conduct of Mrs. Broderick on the occasion referred to. She admitted that she broke the window of the automobile, but she said that it was done accidentally, while she was struggling to free herself from the grasp of her husband, during a quarrel, on the back seat of the car. The two other members of the party were on the front seat. The weight of the testimony is against Mrs. Broderick concerning her conduct on the occasion referred to. But, considering that such improper conduct as Mrs. Broderick may have been guilty of that night was the result of a drinking bout in which Mr. Broderick participated with his wife, we do not find that her conduct amounted to such ill-treatment as would justify a decree of separation from bed and board. In fact, Mr. Broderick’s accusations of ill-treatment and outrages on the part of his wife are hardly separable from his accusation that she was guilty of habitual intemperance, of such a nature as to render their living together intolerable. The evidence in this case could not justify a condemnation of this young woman as being guilty of habitual intemperance.
 

 Inasmuch as Mrs., Broderick has not appealed from the judgment dismissing her reconventional demand for a decree of separation from bed and board,— and has not answered her husband’s appeal from the judgment dismissing his suit, — Mrs. Broderick’s reconventional demand has passed out of the case.
 

 The judgment appealed from is affirmed.