*128
 
 ODOM, Justice.
 

 Plaintiff and defendant were married on June 28, 1923. Four children, all girls, were born of their marriage, the youngest being about 10 and the oldest about 17 years of age when the present suit was filed.
 

 On February 13, 1941, the wife sued her husband for separation from bed and board ■on the ground of cruel treatment. She alleged that her husband had been guilty of such excesses, outrages, and cruelty toward her as to render their living together insupportable. She prayed for judgment granting her a separation from bed and board, and for custody of the minor chil■dren. She alleged that the community owned certain property, both real and personal, which she feared her husband would dispose of during the pendency of the suit, .and prayed for an injunction prohibiting him from encumbering or disposing of the •property during the pendency of the suit.
 

 She alleged that during and since the year 1936 her husband had beaten and oth■erwise mistreated her; that in the year 1936 her husband became angry and struck her a severe blow on her jaw with his fist, •and that said blow and the after-effects thereof were very painful to her. She further alleged that during the summer of 1940 he made a violent attack upon her with his fists, beat and bruised her about the body, face, and head, and seriously injured one -of her hands, and that on the same day he left home without giving her any notice as to where he was going, and remained away from home for the entire week without communicating with her, and that during ■,the course of the week he provided her with no funds for the maintenance and sustenance of herself and their four minor children.
 

 She further alleged that on the night of February 3, 1941, while one of the children was ill and while she herself was ill, she requested her husband, who was occupying another bedroom, to arise and treat the child, and that in reply to her request her husband called her a vile ánd opprobrious name, “which for the sake of delicacy is omitted from this petition”, and alleged further that on this occasion he threatened to kill her. She further alleged that on many occasions her husband had threatened to kill her, and that as a result of these threats she suffers grave mental anguish for fear that he will make an attempt upon her life. She further alleged that her husband is given to outbursts and fits of temper, during which he curses and abuses her, and that he uses vile, obscene, and abusive language in his conversation with her and in the presence of their minor children. •
 

 She further alleged that her husband gave her only $2 per week with which to buy clothes and incidentals, and that she needed surgical treatment which he refused to provide.
 

 The husband filed answer in which he denied plaintiff’s allegations of cruelty, and, assuming the position of plaintiff in reconvention, he alleged that in his relations with his wife he had always conducted himself properly and had done all in his power to make her comfortable and happy, and that, notwithstanding all this, his wife had been guilty of cruelty toward him, and that she
 
 *130
 
 had,treated him so cruelly and had committed such excesses and outrages toward him as to make their further living together insupportable.
 

 He further alleged that his wife had repeatedly told him that she cared nothing for him, but that she did care for another man. He alleged that his wife had neglected him, their children, and their home; that she habitually associated outside the home with another man, permitting him to escort her to shows, bathing beaches, and public entertainments; that she went riding with him at night in his automobile; that her association with this individual was more or less public and was such as to cause comment and gossip, all of which was extremely embarrassing to him, which embarrassment amounted to cruelty. He further alleged that he had admonished his wife to desist from such conduct, and that she had emphatically refused to do so. He further alleged that his wife’s social conduct was such as to bring reproach upon him and upon the family.
 

 For these reasons, he prayed that his wife’s suit against him be dismissed, and that he have judgment in reconvention against her for a separation from bed and board, and that he be given the care and custody of the minor children of the marriage.
 

 The case went to trial on the issues thus raised, and after trial there was judgment in favor of the husband and against the wife, granting to him a separation from bed and board and the custody of the minor children. From this judgment the wife appealed.
 

 The record in this case reveals a sad story of domestic infelicity. After 20 years of married life, this husband and his wife seem' to have found it utterly impossible to live together in peace, much less in happiness. Not only d’o they disagree about practically everything, but they have physical encounters — they fight. As to the origin of these disputes, outbursts, quarrels, and physical encounters, their testimony is about as conflicting as can be imagined. They all took place in the home while no one was present except themselves and their children. The record shows that the children were present and witnessed some of these unfortunate occurrences. They were not called as witnesses, although, when the case was tried, the youngest of the four was about 10 and the oldest about 17 years of age. Thus, neither the wife’s testimony against her husband nor the testimony of the husband against his wife is corroborated by the testimony of any other witness.
 

 However, the husband’s allegations that his wife habitually associated outside the home with another man were proved beyond question. The wife anld daughter of the man involved and other witnesses gave testimony as to plaintiff’s misconduct in this respect. Furthermore, the plaintiff as a witness admitted her association with this man but said that there had been no improper conduct on her part.
 

 The trial judge, after hearing the witnesses, reached the conclusion that the husband was entitled to a separation
 
 “a
 
 mensa et thoro,” and entitled to the custody of the minor children, and rendered judgment
 
 *132
 
 accordingly. After a reading of the record, our conclusion is that his ruling was correct.
 

 Referring now to the wife’s allegations and testimony relating to her husband’s cruelty, the record discloses that at some time during the year 1936, more than four years before she filed her suit, the husband struck her with his hand or fist. They were in a room alone, listening to a radio broadcast of a pugilistic contest between Max Schmelling and Joe Louis, two of the world’s greatest heavy-weight prizefighters. When the announcement was made that Schmelling had administered a knock-out blow to Louis, the wife expressed surprise and wondered how it was done. The husband demonstrated by striking his wife on the jaw with his fist. He testified that he merely “tapped her on the side of the jaw” in fun. He said he was not angry and did not intend to hurt his wife, and that, as a matter of fact, he did not hurt her. She testified that he was angry and that the blow was so severe that she was badly wounded and injured. Their testimony is conflicting as to the severity and the results of the blow. If the husband’s version is accepted, this incident is of little importance. If the wife’s version is accepted, it was serious. However, the fact that the wife continued to live with her husband without complaint for more than four years after this incident indicates that the husband’s version of it is probably correct, and that; even if she thought he was guilty of misconduct toward her, she condoned the offense. If he had so violently attacked her and had administered a severe blow, by which she was severely wounded, as she says she was, it is not likely that she would have continued to dive with him as she did. Under the circumstances, we attach little importance to the affair.
 

 The wife alleged that her husband assaulted and beat her in 1940. She testified that he “beat her up” and severely wounded her, and that as a result of the fray her thumb was knocked out of joint. The husband admits that he struck his wife with his hand more than once on that occasion, but said that his wife provoked the encounter. He says that she became angry and went into a rage because he refused to correct one of the children for some misconduct at the dinner table, and that she threw a platter of ice cream at him, which struck him on the face, causing a slight wound near the eye.
 

 The wife says that she corrected the child for her misconduct, and that her husband became angry and called her a vile name. She was asked whether she did not throw a bowl of food at him, and she said she did not. She was then asked whether he did not have a cut on his head, and she said she did not know. She was asked whether she did not hit him first on that occasion. Her answer was “I slapped him in the mouth because he called me a vile name.” She did not mention the name he called her.
 

 The wife, in speaking of the disposition of her husband, said, “He fusses over everything.” She was asked, “You retaliate?” She said, “Sure, I am human.” She was then asked, “Does he start all the fusses?”
 
 *134
 
 She answered, “We both do, but he loses his temper every time.”
 

 As to the occurrence on the night of February 3, 1941,- when plaintiff says that her husband refused to leave his bed and minister to the sick child, the testimony shows that they did disagree and quarrel on that occasion, but, as to the cause of the disagreement and what was said by each, the testimony is so conflicting that it is impossible to say just what happened. It is evident, however, that each became angry, and the husband admits that he used some bad language during the progress of the quarrel. He says, however, that he was greatly provoked and exasperated by his wife’s conduct.
 

 The testimony shows beyond question that both the wife and the husband were guilty of reciprocal excesses and outrages. As to the episode which occurred in 1936, when the couple were listening to the broadcast of the prizefight, the husband seems to have been at fault for whatever happened at that time, but, as we have said, we are satisfied that the wife’s version of that encounter was greatly exaggerated, and that, if the husband inflicted any injury whatever upon his wife, it was unintentional and very slight. Furthermore, she seems to have condoned the offense.
 

 As to the other incidents or encounters of which the wife complains, the testimony is so conflicting as to the cause-or origin of them that it is impossible to say definitely who was at fault. As to the fight which occurred in 1940, which started at the dinner table, the wife denied that she threw the platter of food at her husband and wounded him with the dish. But she admitted that she slapped him in the face before he assaulted her. Therefore, the husband’s conduct on that occasion was not without provocation. The wife’s conduct was extremely exasperating and calculated to bring about just such an encounter as ensued. According to the wife’s own testimony, she herself was not free from fault. Her conduct on this and other occasions was such as was calculated greatly to exasperate her husband.
 

 It has been repeatedly held by this court that a husband or wife is not entitled to a separation from bed and board because of cruelty if his or her conduct was such as to exasperate the other spouse and provoke the acts complained of.
 

 In the case of Amy v. Berard, 49 La.Ann. 897, 22 So. 48, this court held that:
 

 "The law which provides for a separation from bed and board in certain cases is made for the relief of the oppressed party, not for interfering in quarrels where both spouses commit reciprocal excesses and outrages.” (Syllabus.)
 

 Other cases in point are Ducros v. Ducros, 156 La. 1033, 101 So. 407; Snell v. Aucoin, 158 La. 767, 104 So. 709; Armstrong v. Whalen, 161 La. 613, 109 So. 140; Romero v. Dautrielle, 163 La. 597, 112 So. 498; McKoin v. McKoin, 168 La. 32, 121 So. 182; Weiser v. Weiser, 168 La. 847, 123 So. 595; Artigues v. Artigues, 172 La. 884, 135 So. 665, 76 A.L.R. 981; Armentor v. Gondron, 184 La. 922, 168 So. 102.
 

 The wife’s testimony that she was not provided with sufficient funds to pay her
 
 *136
 
 necessary expenses is not impressive. She appeared in court well dressed. She admitted that she had some money at that time and that she had about $150 at the time the suit was filed. She admitted also that she had recently made two trips to Florida, one to Tampa and the other to Pensacola; that on one of the trips she took a maid with her, and that she spent considerable time at each of those resorts. She admitted that she made these trips without informing her husband as to where she was going or when she would return. Asked where or how she obtained the money with which to pay the expenses of these trips, she replied that she had been in the real estate business and had worked in a department store in New Orleans. Her own testimony shows that she was not at the time of the trial, and had not previously been, in need of funds. She said that her husband refused to bear the expense of surgical treatment which she needed. But her testimony that she needed such treatment is not corroborated by the testimony or a certificate of a physician.
 

 If there were nothing involved in this controversy between husband and wife except the brawls and encounters disclosed by the record, it might be said that each of the parties was at fault and that their wrongs were mutual. However, due to the wife’s conduct aside from these altercations, her faults decidedly outweigh the faults of her husband. We refer to the undisputed testimony relating to her association with another man. Her conduct in that respect, which we have already discussed in detail, greatly exasperated her husband, and naturally so. It was perfectly natural for him to feel aggrieved and to protest. It clearly appears to us that the wife’s conduct in this respect and her attitude toward her husband with reference thereto were largely responsible for the unfortunate occurrences about which she so bitterly complains. Her conduct was inexcusable. It was such as to cause her husband to feel embarrassed and humiliated. He had a right to protest, but his protests were unavailing and seem to have irritated her. Her conduct in this respect brought on constant discord and disagreements.
 

 Under the circumstances disclosed by the record, the judgment in favor of the husband, granting to him a separation a mensa et thoro and awarding to him the care and custody of the minor children, is correct.
 

 Counsel for the wife ask for attorney’s fees amounting to $750. Attorney’s fees are not mentioned in the judgment appealed from. The trial judge probably thought that, inasmuch as there was property, both real and personal, which was accumulated during the existence of the community, the question whether the wife was entitled to judgment for attorney’s fees and the amount thereof should await the final settlement of the community affairs. If this was the view taken by the judge, we think he was correct in omitting from the judgment any reference to the fees claimed by the attorneys.
 

 For the reasons assigned, the judgment appealed from is affirmed.