MILLER, Judge pro tem.
The wife instituted this suit against her husband for a separation from bed and board on the grounds of cruel treatment,, seeking custody of her 13 year old daughter, alimony for herself and her child, and a partition of the community property. On< the trial of the case on the merits, the' Family Court for East Baton Rouge Parish rendered judgment in favor of the plaintiff. The defendant appealed from the judgment decreeing the separation from bed and board, but has not alternatively complained as to the award of alimony or custody of the child to the mother.
The record shows that the couple was married in this State on January 9, 1944, and that there was born of the union one daughter, who was 13 years of age as of the date of the trial. On June 18, 1958, the plaintiff instituted the present action against her husband alleging that he had been guilty of outrages and cruelties which rendered their living together insupportable. She alleged that she was forced to leave the matrimonial domicile on June 17, 1958, because of the following acts of cruelty which allegedly occurred in the weeks prior to June 17, 1958; that the defendant fails and refuses to properly support his wife and child; that her husband will not live with her and has ordered her to leave the matrimonial domicile; that her husband has refused to sleep in the same room with her; that her husband habitually remains out late at night sometimes returning home at 2:00 or 3:00 o’clock in the morning, and sometimes not coming home at all; that on June 11, 1958, her husband informed her that he had sold their home, which was the matrimonial domicile, and then and there ordered her to get out of the house; that during the early morning hours of June 12, 1958, her husband broke into the home early in the morning hours, threatened and frightened plaintiff to such an extent that she called the Baton Rouge police.
The defendant denied each and every one of these allegations and testified in his own-behalf. He contended that his wife was at fault in that she would always go to his *618 employer on payday to see that she received a part of his check. By this evidence, he also sought to show that he had been supporting his wife and child. While this shows that defendant’s wife received a part of each paycheck, it also indicates that it must have been necessary for Mrs. Maglio-lo to go to this extreme in order to meet the household expenses. While admitting that he stayed out late at night and sometimes until 2:00 and 3:00 a. m., defendant explained that on each and everyone of these occasions, he was working overtime on his job. Defendant denied that he would not live with her, and contended that his wife would not permit him to sleep in the same room with her. The evidence sustains his contention in this respect for the last three weeks that these parties lived in the same home. Defendant’s principal claim that his wife is at fault is brought out in the following testimony given under cross-examination :
“Q. Mrs. Magliolo, I’m asking you a question here that I think you can be the best judge. Are you not easily provoked to emotional strain ? A. What do you mean?
“Q. I mean don’t you get highly excited very easily with practically little or no provocation? A. No, sir, I’m nervous — I’m awfully nervous, I know I am.”
The separation from bed and board was granted under the provisions of LSA-C.C. Article 138(3) providing grounds for separation from bed and board which may be claimed reciprocally as follows:
“On account of habitual intemperence of one of the married persons, or excesses, cruel treatment, or outrages of one of them towards the other, if such habitual intemperence, or such ill-treatment is of such a nature as to render their living together insupportable * * * ”.
There is ample evidence in the record to sustain the finding of the trial judge that although there was some fault on both sides, it can readily be determined that the fault of the husband was the greater. The evidence which is the most relevant and impressive is the testimony of the husband, wife and child. After hearing the evidence and oral argument by both counsel, the court gave clear and convincing reasons for believing the testimony of the wife and child on certain points which were contradicted by her husband.
The wife’s testimony, that she did not know of the sale of the home until after it had been sold, was accepted as true by the trial court. The husband had testified that his wife was fully informed that the house would be sold, but later admitted that it had been sold for three days before he first told his wife. When questioned about the price of this sale, the husband first stated that there was no cash consideration. On being informed that the sale recited a cash sale price of $1,200, he then testified that he had used this $1,200 to pay debts. Subsequent thereto, he then testified that the $1,200 was being held by the attorney for the purchaser of the property, and that he would use the money to pay on his debts when he received it.
Defendant admitted that at the time he sold the home, he had made no effort to provide any accommodations for his wife, but testified that he would have done so had it appeared that she would live with him. His testimony on this point is conflicting because he testified that he found it necessary to sell the home place and all of its furnishings to pay on his debts. When questioned concerning what plans he had made to arrange for furnishings for the home that he would rent, he testified that he would have no difficulty in purchasing new furnishings.
One other occurrence of cruelty which was held to be valid by the trial court involved an incident that was not alleged in the pleadings. However, the pleadings were enlarged by virtue of the fact that there was no objection to the evidence *619 concerning this incident. See State v. Lundie, 47 La.Ann. 1596, 18 So. 636, and Holland v. Gross, 195 So. 828. Just a few weeks prior to the separation of the parties, the defendant drew a gun on his wife in the presence of their daughter. The incident came to an end when the daughter jumped between her mother and father informing the father that he must kill her before he could harm her mother.
Mr. Magliolo is an automobile mechanic who earns a weekly commission varying from $100 to $150 per week. He frankly admits the incompatibility which has existed in their home for many years, but testifies that his wife is at least 50% to blame. Appellant cites the jurisprudence holding that a husband or wife is not entitled to a separation from bed and board because of mistreatment if his or her conduct was such as to exasperate the other spouse and provoke the offending act. Abele v. Barker, 200 La. 125, 7 So.2d 684, Broderick v. Broderick, 191 La. 492, 186 So. 5, 120 A.L.R. 1173, and Armentor v. Gondron, 184 La. 922, 168 So. 102, 104.
The facts of the case of Abele v. Barker, supra, are similar to those in the instant case. There the Supreme Court quoted the law as argued by the appellant in this case, but concluded, that the husband was entitled to a separation due to the fact that the wife’s faults decidedly outweighed those of her husband.
Insofar as the case of Broderick v. Broderick, supra, is relevant to the issues of this case, the Supreme Court found that the only occasions when the wife treated her husband in a cruel manner was after the two of them had engaged in a “drinking bout.” The Supreme Court did not discuss the doctrine of mutual fault, but simply found that the wife was not guilty of ill-treatment and outrages of such a nature as to render their living together intolerable.
In Armentor v. Gondron, supra, the Supreme Court applied the doctrine of mutual fault and refused to grant a separation when it was concluded from the evidence that “from the beginning of their matrimonial relation the (wife’s) conduct has been unfortunately such as was calculated to exasperate the (husband).” There, the husband spent most of his time and energy operating a store and post office. His wife brought on innumerable quarrels and disputes because she wanted to go out every night. Her preference was to go to night clubs, dances, or on other social gatherings. Since the husband could not take her to these events she eventually abandoned him. On many occasions, he tried to get his wife to return to the matrimonial domicile, but to no avail. On the occasion of her last refusal, he “lost his temper, applied an abusive epithet to (his wife) grasped her by the arm, and slapped her in the face.” These facts adequately distinguish this case from the instant one.
We do not find these cases in point for the reason that here the husband’s fault substantially exceeds that of the wife.
Having found that the plaintiff carried the burden of proof as required by the jurisprudence (Aydell v. Aydell, 200 La. 47, 7 So.2d 611) by showing that her husband was guilty of cruel treatment which was substantially in excess of her own fault, appellants’ argument that the record does not establish any misconduct which would be sufficient to warrant a judgment of separation falls. As authority for this argument, appellant has cited the cases of Temperance v. Herrmann, 191 La. 696, 186 So. 73, Snow v. Snow, 181 La. 204, 159 So. 323, Silva v. Miramon, 156 La. 360, 100 So. 528, Johnson v. Goodlett, 152 La. 294, 93 So. 99, and Walker v. Walker, 145 La. 911, 83 So. 188. We have no fault to find with these decisions but they are not applicable to this case.
Appellant’s last contention is that plaintiff lived with her husband up to the very day of the filing of the original petition seeking the separation. Therefore, by *620 her own acts she has condoned and forgiven any transgressions which she may have believed had been occasioned her. LSA-C.C. art. 152. Although the plaintiff did not leave the matrimonial domicile until June 17, 1958, the husband, wife and child all testified that for at least the preceding three weeks Mrs. Magliolo and her daughter stayed behind locked doors whenever Mr. Magliolo was in the home.
A wife’s continuous forbearance, patience, and endurance of the cruel treatment, excesses and outrages of her husband, long before complaining to the courts, cannot be confounded with or considered as a reconciliation, barring her action for separation from bed and board. Balfe v. Balfe, 165 La. 283, 115 So. 489, Lynch v. Lynch, 138 La. 1094, 71 So. 195, and Mack v. Handy, 39 La.Ann. 491, 2 So. 181.
For the reasons assigned, the judgment appealed from is affirmed.