BLANCHE, Judge.
Durbin B. Kleinpeter filed suit seeking separation from his wife, Jean McCulloh, on the grounds of her habitual intemperance. By reconventional demand, Jean McCulloh sought a separation from plaintiff on the grounds of abandonment. Judgment was rendered by the trial judge finding mutual fault and, therefore, neither party was granted a separation. From this judgment both parties appealed. We affirm the judgment of The Family Court *147 .dismissing plaintiff’s suit but reverse the judgment insofar as it denies the defendant’s reconventional demand for a separation.
Plaintiff and defendant have been married since 1948 and of their marriage seven children were born. At the time of trial all except two children had reached the full age of majority. During the past few years their marriage began to disintegrate and on February 14, 1974, plaintiff-husband removed himself from the marital domicile on Perkins Road, leaving the defendant wife there with their two minor children, Stephen Sears, age seventeen, and Jeffrey Andrew, age fifteen. His alleged reason for leaving was the habitual intemperance of the defendant wife. He contends that for the past several years she had continuously indulged in the drinking of intoxicating beverages to the extent that she would become extremely irritable with him and that because of such drinking she refused to accompany him on business functions, preferring to remain at home and drink intoxicating beverages. He alleges the entire matter was brought to a head when he learned from other sources that the defendant was arrested and charged with driving while intoxicated on January 20, 1974. He further alleges that for those reasons their further living together was insupportable and, therefore, he was entitled to a separation.
The trial judge held that neither party was entitled to a separation based upon the evidence and that the deterioration of their marriage was due to the mutual fault of both parties, stating that the testimony indicated that perhaps both drank more than they should.
Plaintiff’s action is based on LSA-C.C. Art. 138(3) [1]. In attempting to prove his case, the plaintiff testified that for years the marriage between him and defendant was not what it should have been, in fact, they did not share the same bedroom for at least two years prior to his leaving. He asserted that many times he would come home in the evening and find his wife lying across her bed but when asked if he ever approached her while in such condition to ascertain what was wrong, he replied in the negative, stating that he simply assumed she had been drinking. He admitted that both of them drank but that in spite of the fact that he never drank at home he would find martini and cocktail glasses throughout the house when he returned at various times during the day, indicating to him that the defendant had been drinking. He was home for supper only once or twice a week during the several months preceding his departing the matrimonial domicile and was usually not home at night because he would leave to go to a nearby country club to play cards in an effort to prevent further friction between himself and the defendant. He never helped much around the house or did any yardwork because his being around the house usually increased the antagonism between them. He admitted the defendant attended to household duties in good fashion, gave the children a good breakfast in the morning, always kept their clothes properly and that she was “on the ball” every morning. He contended that immediately after the schoolbus picked up the children in the morning, she would go to the golf course where she would drink until the afternoon. However, he admitted she was always present when the children returned from school.
The only other proof submitted by plaintiff to prove the habitual intemperance of the defendant was the testimony of the plaintiff’s brother, Thomas G. Kleinpeter, Sr. He testified that he had seen defend *148 ant drinking on occasions during the day and that once or twice during the last six months she drove into his driveway to extend social invitations to his family while she had a drink in her hand. However, he saw her and the children at church regularly as they attended the same services and could not accuse her of being a poor mother.
The defendant-wife, Jean McCulloh, related that after the plaintiff departed for work in the morning he usually came back home about 11:00 A.M. to check his mail and phone calls and then went out again, usually not returning until everyone was in bed. She asserted plaintiff had not come home regularly for supper in years and that he, too, drank but not much at home. She agreed that he did little around the house, and, in fact, she herself did all the chores including mowing the lawn.
Sue Ann Kleinpeter began Centenary College in Shreveport in September of 1974. She said prior to her leaving home for school her mother always attended to her household duties, maintaining their clothes, cooked all their meals, managed the household, and when needed drove the children back and forth to school. She felt the defendant was a very good mother.
Durbin B. Kleinpeter, Jr., being twenty-four years old, does not live at home but visits frequently. He confirmed that during the time he was living at home his mother took care of the entire household, and that she also participated in church activities and the ladies’ golf association at the local country club. When asked about the situation at home, he observed that it was happier after his father left than before.
Steve Kleinpeter, one of the minor children who lives at home, said the defendant capably “runs the house.”
We agree with the trial judge’s determination that the plaintiff failed to prove habitual intemperance on the part of defendant. Plaintiff vigorously argues that the DWI incident was the “straw that broke the camel’s back” and that it justified his leaving, but we cannot agree that a single DWI incident is proof of habitual intemperance, thereby giving the husband lawful cause for abandonment. The evidence is otherwise scant as to her drinking and the other testimony relative to the manner in which she cared for the children and ran the family home belie the allegations of habitual intemperance. Furthermore, the evidence reveals that plaintiff’s husband absented himself frequently from the family home at night to play gin rummy with a friend and on these occasions admitted to having alcoholic drinks. His abhorrence of his wife’s use of alcohol may be judged in light of his own actions. Broderick v. Broderick, 191 La. 492, 186 So. 5 (1939). The Broderick case stands for the proposition that whether the habitual intemperance with which one party charges the other is sufficient to render their further living together insupportable depends on the living conditions and habits of the parties during the marriage and what may be insupportable to a person of quiet habits, who totally abstains from liquor, may not be insupportable to one who regularly drinks with his spouse at night clubs or on other occasions. Here we find no evidence of the husband’s remonstration of his wife for her drinking, other than the occasion when he left the matrimonial domicile upon hearing of his wife’s arrest for driving while intoxicated.
For these reasons, plaintiff failed to prove the habitual intemperance of his wife and his suit for separation was properly denied.
In order to defeat the defendant’s reconventional demand for a separation based upon the abandonment of the plaintiff, plaintiff must show he abandoned the *149 matrimonial domicile for a lawful cause as required by LSA-C.C. Article 143.[2]
The evidence indicates that the D. W.I. incident precipitated the friction that had developed over a period of years between this husband and wife. But the mere fact that there is a lack of affection between the parties to a marriage does not give one of them lawful cause to abandon the other. As was noted in Loftin v. Loftin, 304 So.2d 869 (La.App. 2nd Cir. 1974):
“Although the participants in this action developed an atmosphere of friction and unpleasantness between themselves which made living together difficult, this in itself was not sufficient to justify one party leaving the domicile without placing himself in jeopardy of being charged with abandonment.” (304 So.2d 869, 870)
In view of the foregoing, and considering the fact that the plaintiff-husband failed to prove the very basis which he alleges drove him from the common dwelling, that is, the habitual intemperance of the wife, we charge the husband with abandonment and the wife is therefore entitled to a separation from bed and board.
For the foregoing reasons, the judgment of the trial court denying plaintiff’s suit for separation based on habitual intemperance of the wife is affirmed. The judgment denying the suit for separation by the defendant on her reconventional demand against her husband, the plaintiff, Durbin Kleinpeter, Sr., is hereby reversed and set aside.
It is therefore ordered that there be judgment herein in favor of the plaintiff in reconvention, Jean McCulloh, and against the defendant in reconvention, Dur-bin B. Kleinpeter, granting a separation a mensa et thoro between them. It is further ordered that the plaintiff in reconvention, Jean McCulloh, be given the permanent care, custody and control of the minor children, Stephen Sears and Jeffrey Andrew, subject to the reasonable visitation rights of the plaintiff, Durbin B. Kleinpeter.
Plaintiff is cast with all costs of this suit.
Affirmed in part and reversed in part.

. LSA-C.C. Article 138(3) provides in part: “Separation from bed and board may be claimed reciprocally for the following causes: 3. On account of habitual intemperance of one of the married persons, or excesses, cruel treatment or outrages of one of them toward the other, if such habitual intemper-anee, or such ill-treatment is of such a nature as to render their living together insupportable; ”

. LSA-C.C. Article 143 provides that:
“Separation grounded on abandonment by one of the parties can be admitted only in the case when he or she has withdrawn himself or herself from the common dwelling, without a lawful cause, has constantly refused to return to live with the other, and when such refusal is made to appear in the manner hereafter directed; provided, however, that separation grounded on abandonment may be the object of a reconventional demand in any suit for separation from bed and board.”