296 So.2d 437 (1974)
Rawson COLEMAN et al.
v.
John MARZULLO et al.
No. 6419.
Court of Appeal of Louisiana, Fourth Circuit.
June 10, 1974.
Rehearing Denied June 18, 1974.
Writ Refused July 1, 1974.
*438 Charles G. Merritt, New Orleans, for plaintiffs-appellants.
John W. Haygood, Donald P. Endom, Anthony J. Correro, III, New Orleans (Jones, Walker, Waechter, Poitevent, Carrere & Denegre), New Orleans, for defendants-appellees.
Before SAMUEL, REDMANN and LEMMON, JJ.
REDMANN, Judge.
We granted certiorari to review a district court decision in a state bank directors' election dispute, because the one-year terms would partially be lost by the passage of even the brief period required for a specially-fixed appeal, and because of the public nature of the banking business.
The district court held that at an annual shareholders' meeting which fixed the number of directors at 20 and then nominated only 15 candidates, although each of the 15 received some votes, only 11 were elected. Plaintiffs are the four candidates held not elected. We reverse.
La. R.S. 6:3[1] contains the only express state banking law directive pertinent to the election of bank directors. A bank's articles of association are required by R.S. *439 6:244 to contain, among other things, "the number and names of its directors and managers, the mode of election and liquidation at the end of the term." (Sic; the wording is from La.Acts 1902, No. 179 § 7.) We assume the banking law thus allows the articles to provide any "mode of election" except one inconsistent with R.S. 6:3. Defendant Bank's articles provide: "Elections [sic] of Directors shall be by written ballot. The stockholders receiving the majority of votes cast at such election [sic] shall be declared elected. . . ."
The articles further provide that "[i]n the event the stockholders at any annual election shall elect less than the number of Directors authorized . . . the places unfilled shall be considered as vacancies, which vacancies may be filled by a vote of a majority of the Board of Directors actually elected at said annual meeting."[2]
The prior practice of our shareholders was to deliberately leave some authorized directorships vacant, by unanimous abstention from voting for anyone other than a proposed incomplete slate. (The purpose was to enable the directors to offer a directorship to an important prospective customer if occasion should arise.)
Nevertheless the law is express: "In all elections of directors of state banks, each holder of stock of any class may vote the votes allocable to the number of shares of stock owned by him for as many persons as there are directors to be elected." R.S. 6:3. The number of directors is fixed by the charter at from five to 30, as set at the annual shareholders' meeting for the ensuing year. The notice of the annual meeting in question stated its purpose "to fix the number of and elect the directors of the bank for the ensuing year."[3]
The majority shareholders could have fixed the number of directors at 11 and elected all 11, or they could have fixed the number at 20 and elected 20. But it was beyond their power to fix at 20 yet limit other shareholders to voting for only 11, since R.S. 6:3 gives to each shareholder a vote "for as many persons as there are directors to be elected."
The majority's alternative contention is that the four plaintiffs were not elected, because of the charter provision that "the stockholders receiving the majority of the votes cast at such election shall be declared elected . . . ." That provision is preceded by the regulation that "Elections [sic] of Directors shall be by written ballot." Thus those provisions elect, at directors' "elections", those "receiving" a majority of the written ballots cast "at such election".[4]
*440 Here 196,316 votes were cast by the shareholders for each of the 11 majority candidates and 26,331 for each of the four others. (Each shareholder who voted for the four minority candidates also voted for the 11.) The articles' provision for election by "majority of the votes cast at such election" cannot mean all votes for all directors (which amounted to over 2,000,000 votes), because that interpretation would mean no director was elected since no director received over half of 2,000,000 votes. Nor can it mean "majority of the votes present" since it says "cast". (Compare, n. 4 supra, R.S. 12:75(I)'s "actually cast".)
If every voting shareholder voted for the same number of directors (e. g., each voted for 20), then the total vote could be divided by the number of directors to be elected, to find the vote cast in each election. But where some vote for a lesser number, the total vote cannot be divided by the number of directorships (or, worse, the number of candidates) to ascribe a number of votes cast for each election. For example, dividing the 2,264,700 votes here cast by 20 (or even 15) would give a "per election" average of 113,235 (or 150,980). This number would suggest that plaintiffs' 26,331 votes is not a majority, but it would also suggest that the other candidates' 196,315 is 130% of the "votes cast"! This would constitute partial but perceptible cumulative voting by partial abstention, in violation of R.S. 6:3's prohibition of cumulative voting. The "votes cast in such election" cannot be interpreted to mean the total of all votes divided by the number of directorships (when not all voters vote for the same number of directors).[5]
When there are more seats than candidates and no one's candidacy is in opposition to another's candidacy, the only meaning we can ascribe to the articles' provision is that, at the "Elections of Directors", in the election of each director, the "stockholder receiving the majority of votes cast at such election" is any stockholder who receives one vote or more. An absolute majority present orally expressed opposition to the election of more than 11 directors, and the chairman of the meeting took the position that abstention from voting for more than 11 was a vote against electing any more than 11 of the 20 authorized directors. But the majority cannot override the statutory and charter provisions for the election of directors by the shareholders. The only result of their action was to abstain from voting for nine of the 20 authorized directors (while some shareholders abstained from voting for only five). Had the majority abstained from voting altogether, the minority could not be deprived of their right to vote for directors at the annual shareholders' meeting.[6] The partial abstention by the majority similarly cannot deprive the minority of the statutory right to cast one vote for each authorized director, R.S. 6:3.
We conclude that, on our facts, those votes which were cast for all 15 director *441 candidates (where 20 directors were authorized) must be counted in each of 15 director elections; that those votes cast for only 11 candidates must be counted only in 11 director elections; that consequently in each of 11 elections the total vote was 196,316 (and in each case unanimously elected a director); and in each of the other four elections the total vote was 26,331 (and in each case unanimously elected a director).
We will therefore order plaintiffs recognized as directors.
Plaintiffs also asked injunction against the filling by the directors of vacancies among the authorized number of directors resulting from failure of the shareholders to elect directors. Perhaps this request began as a mistaken collateral request intended to prevent treating plaintiffs' four seats as vacant, but as worded the request to enjoin naming directors more than 15 in number can only be based on the theory that R.S. 6:3 overrides the articles' provision for filling vacancies (apparently modelled on R.S. 12:81 subd. C(3)).
R.S. 6:3's wording, n. 1 supra, is that "[i]n all elections of directors of state banks" shareholders have a vote for each directorship but may not vote cumulatively. The articles authorize vacancies (including those from shareholders' failure to elect) to be filled by the remaining directors, even if not a quorum. We find no conflict. In the election, each shareholder had (we have held) the right to vote for each director to be elected, in accord with R.S. 6:3. Yet the election produced only 15 of 20 authorized directors. The filling of the resulting vacancies by the directors would not deprive the shareholders of their statutory right to vote "[i]n all elections".

Motion on Delays
Defendants have moved for an order "that before this Court's decision in this matter becomes final and executory,. . . the same rehearing rights and the same delays as in the case of an appeal" should apply, and for a further stay of any modification of the trial court judgment by this court to allow application for writs to the Louisiana Supreme Court.
The purpose of our grant of certiorari was to enable plaintiffs to act as directors for as much as possible of the remaining ten months of their directorship. This purpose would be defeated by a holding that no appellate court preliminary injunction (as opposed to a trial court preliminary injunction) could be effective until the time when a money (or similar) judgment would become "executory" (after time for rehearing and application to the Supreme Court, La.Const. art. 7 § 11). Whether the theory be that a proper preliminary injunction is not a "judgment," or is not a judgment that ever becomes "executory", or that the summary nature of the proceedings[7] entitles it to immediate effect, we hold that a preliminary injunction which is essential to the proper relief of the party (compare C.C.P. art. 2164) cannot be refused consistently with the mandate of Const. art. 1 § 6 requiring the courts to be open to afford adequate remedy and justice administered without denial or unreasonable delay.
Our preliminary injunction will not entitle plaintiffs to immediately collect directors' fees for meetings attended prior to definitiveness of our permanent injunction, since an order to pay directors' fees would be similar to a money judgment which cannot become immediately executory.

*442 Decree

The judgment of dismissal is set aside, and
It is ordered that defendants John Marzullo and Colonial Bank are preliminarily enjoined, effective immediately and until such time as the permanent injunction hereafter granted becomes definitive, or until such time as this court or the Supreme Court orders otherwise, to accord to plaintiffs full recognition of their status as elected directors of Colonial Bank elected April 16, 1974, equal to the status of every other director, except that directors' fees earned by plaintiffs in the exercise of their office under this preliminary injunction shall not be paid until such time as the permanent injunction becomes definitive.
It is further ordered that defendants are permanently enjoined to accord to plaintiffs full recognition of their status as elected directors of Colonial Bank, equal to the status of every other director.
Costs are to be paid by defendants.
NOTES
[1] "In all elections of directors of state banks, each holder of stock of any class may vote the votes allocable to the number of shares of stock owned by him for as many persons as there are directors to be elected. Cumulative voting is prohibited.

"These provisions do not apply to stocks owned by the United States Government or any branch thereof."
[2] This provision is consistent with the general business corporation law's R.S. 12:81, subd. C (3). R.S. 12:22 authorizes corporations "for any lawful business purposes, except banking [and others]", insuring that a bank may not be formed simply by forming a corporation, but perhaps providing a basis for ordinarily excluding applicability of corporation law provisions to incorporated banking associations, even when not inconsistent with the banking law. However, defendant Bank's articles assert its organization "into a corporation pursuant to" both corporation law, Title 12, and banking law, Title 6 of the Louisiana Revised Statutes. Thus defendant Bank's articles, which must contain provision for the "mode of election" of directors, R.S. 6:244, might be construed to import corporation law provisions to the extent not inconsistent with Title 6 or the articles.
[3] We ignore the circumstance that management held proxies from a substantial portion (but not a majority) of shareholders, not otherwise represented at the meeting. These proxies are considered as authorizing a vote identical to the represented majority's vote.
[4] We assume this provision is consistent with R.S. 12:75(I): "Except as otherwise provided in the articles or by-laws or in other provision of this Chapter, a majority of votes actually cast shall decide any matter properly brought before a shareholders' meeting organized for the transaction of business, except that directors shall be elected by plurality vote." We here emphasize only that votes "actually cast" are determinative. We need not inquire what the meaning may be of the exception "that directors shall be elected by plurality vote." See Andre, Louisiana Close Corporations, 1971, 45 Tulane L.Rev. 259, 293. We do not decide that this statute is applicable to this banking association (or any other).
[5] Partial abstention by a substantial minority shareholder could assure him that his vote would be a "majority of votes cast" for some directors, under the interpretation being discussed. Suppose a 40% shareholder votes his 40% for only four directors when nine are to be elected, while the other 60% vote for all nine directorships. If the 40% had 40 votes his total cast would be 160, while the 60% total would be 540, for a grand total of 700. Dividing the total of all votes, 700, by the number of directors to be elected, nine, would ascribe 77 and 7/9 votes to each director's election, and the 40% minority's 40 votes would be a "majority of votes cast in such election" (under the improper interpretation being discussed). Since the articles provide that the shareholders receiving "the majority of votes cast" are elected, the 40% shareholder's four candidates should be elected, at least if the other 60% of shareholders were divided. The 40% shareholder could not hope for more with express cumulative voting, which is, as noted, prohibited. (If the other 60% were united in voting 60 votes for each of nine other persons as directors, all 13 candidates would have this theory's "majority of votes cast". This interpretation of "majority of votes cast" is thus again proven erroneous.)
[6] Compare R.S. 12:74, subd. B(2).
[7] See Shell Oil Co. v. Moore, 1972, 260 La. 855, 257 So.2d 432, granting immediate effect to this court's decision (La.App.1972, 257 So.2d 177), prior to delays for rehearing and writ application to the Supreme Court, after our grant of writ and decision of a landlord-tenant matter. The Supreme Court prefaced its Order "considering the summary nature of these proceedings".