374 So.2d 680 (1978)
Lloyd J. RITTINER
v.
Mrs. Patricia S. SINCLAIR, widow of Jack A. Bornemann, wife of Lloyd J. Rittiner.
No. 9421.
Court of Appeal of Louisiana, Fourth Circuit.
November 2, 1978.
On Rehearing February 8, 1979 and July 27, 1979.
*681 A. D. Freeman, Satterlee, Mestayer & Freeman, New Orleans, for defendant.
Samuel C. Gainsburgh, Kierr, Gainsburgh, Benjamin, Fallon & Lewis, New Orleans, for plaintiff.
Rene R. Nicaud, New Orleans (with Robert E. Jeffers, Jr. and Edmund T. Wegener, Jr., New Orleans, on the brief), for the Notaries' Ass'n of New Orleans, amicus curiae.
Leonard H. Rosenson, New Orleans (with Albert J. Flettrich, Joseph V. Bologna, Moise Steeg, Jr., C. Allen Hennesy, Philip Dev. Claverie, Allain C. Andry, III, and Jerry D. Williamson, New Orleans, on the brief), amicus curiae.
Before REDMANN, LEMMON and BEER, JJ.
REDMANN, Judge.
An ex-wife appeals from a judgment of divorce only insofar as it found the spouses mutually "at fault" and therefore denied her alimony. The ex-husband by answer also complains of the judgment's declaration *682 that he too was at fault, as well as of its failure to decide the validity of a premarital contract against community property.
The principal question is what is the nature of fault sufficient to deprive a wife of alimony? We conclude, from Kendrick v. Kendrick, 1958, 236 La. 34, 106 So.2d 707, and from the statutory history of and the interpretation of La.C.C. 160 in Pearce v. Pearce, La.1977, 348 So.2d 75, and Fulmer v. Fulmer, La.1974, 301 So.2d 622, and from C.C. 141 (added by Acts 1976 No. 495), that the only fault which defeats a wife's entitlement to post-divorce alimony is fault which is sufficient to constitute grounds within C.C. 138 for separation in favor of the husband.
Because the wife's fault was not sufficient to constitute grounds for separation, we reverse the refusal to reserve her right to alimony.
The wife did drink a great quantity of alcohol, but the husband drank apace, and both husband and wife "held their liquor" well. Home consumption approximately equivalent to 300 fifths of liquor during a year (a large part of which was spent travelling away from home) may have seemed to the trial judge excessive, and "fault" on the part of both parties. However, it is not the quantity of alcohol but rather the extent and habitualness of intoxication that constitutes "habitual intemperance" within La.C.C. 138 and therefore "fault" within C.C. 160 which would defeat a wife's entitlement to alimony. This wife and husband habitually drank, but they were not habitually intemperate. Proof of intoxication on two or three occasions does not establish habitual intemperance; Broderick v. Broderick, 1939, 191 La. 492, 186 So. 5, 120 A.L.R. 1173. Moreover, the drinking of this husband and wife did not constitute even mutual fault because each party consented to, participated in and encouraged the other's drinking noon and night. A course of conduct approved and consented to by both spouses is not mutual fault; Davieson v. Trapp, 1953, 223 La. 776, 66 So.2d 804; Denbo v. Denbo, La.App. 1 Cir. 1977, 345 So.2d 1257.
Almost all of the specific instances of misbehavior (argumentativeness, punching plaintiff in his back) are both related to the drinking and, in any case, occurred so long ago (as long as nine years ago) as to be considered condoned.
The purported "last-straw" incident involved the husband's son who was redeemed from teen-age illiteracy and brought to responsible and productive adulthood at least in part by the efforts of the wife. It is anyone's guess why she later became intolerant of and intolerable to that stepson; but it is not cause for separation under La.C.C. 138 that one's spouse does not get along with one's child. Nor was there cause in the argument between the spouses that resulted from the mother-stepson dispute on the day of the separation. The record presents the picture of two spouses who (in addition to being heavy drinkers) were both achievers and both assertive, perhaps a little too much so for each other. They doubtless had personality conflicts but the wife did not give the husband cause for separation.
We therefore conclude that the wife was not guilty of fault that would defeat her entitlement to alimony.
We agree with the husband that his demand for a declaration of no community should have been adjudicated. The termination of a marriage by divorce (without prior judicial separation) ordinarily terminates the community, and therefore a petition either for partition of the community or for a declaration that no community existed is an appropriate adjunct to the demand for divorce.
Despite the trial judge's refusal to allow evidence fully on the question there is testimony by both husband and wife that they went to the notary's office separately and signed at different times the purported "act before a notary and two witnesses" required by C.C. 2328 for a matrimonial agreement. Thus they did not execute the required authentic act (see C.C. 2234). The *683 act is therefore invalid for want of form; Flores v. Lemee, 1840, 16 La. 271; Placencia's Heirs v. Placencia, 1835, 8 La. 573; Union Savings & L. Assn. v. Grand Co., La.App. 4 Cir. 1970, 239 So.2d 395, writ refused 256 La. 916, 240 So.2d 375.[1]
The judgment is reversed in its refusal to decide the validity of the contract against community and there is judgment decreeing the contract invalid; and the judgment is further reversed insofar as it held the ex-wife at fault and there is judgment declaring the ex-wife free of fault within C.C. 160, reserving her right to alimony. The ex-husband is to pay all costs.
BEER, J., concurs.
BEER, Judge, concurring.
In Cousin v. Cousin, 327 So.2d 136 (La. App. 4th Cir. 1976), I felt obliged to question our preoccupation with "fault," observing that the state of the jurisprudence might signal a need for legislative action. The Legislature appeared to respond with the modification and reenactment of LSA-C.C. Article 141.
However, in Dixon v. Dixon, 357 So.2d 856 (La.App. 4th Cir. 1978), I felt obliged to note that although progress appeared to have been achieved by the codification of Article 141, its usefulness is frustrated by the inclusion of an automatic mutual fault determination. While correctly acknowledging that many separations are the result of mutual failure on the part of husband and wife, the article requires absolute, unequivocal and irrevocable disallowance of alimony when it (the article) is used as the basis for obtaining a judgment of separation. Parties to a wretchedly unhappy marriage, each of whom honestly acknowledges their own failings, must be reluctant to invoke Article 141 because of its absolute fault finding provision.
So, I still find myself questioning our approach. We continue to be preoccupied with "fault" (which Webster defines as a moral weakness less serious than a vice), and that preoccupation continuesmore often than notto result in knee jerk determinations of "mutual fault."
It is an oversimplification to say that a marriage of 25 or 30 years which has gone stale, with resulting degrees of disappointment, contempt, disgust and, finally, abhorrence on the part of the parties, is the result of "mutual fault" to the extent that such determination absolutely preempts any consideration of alimony.
Unless one or the other of the parties has conducted himself or herself in a totally abhorrent and classically unacceptable way, the determination of an award of permanent alimony should not be irrebuttably preempted on a premise of such a disjointed, nebulous concept as "mutual fault." What is, in most cases, nothing more or less than mutual disillusionment should not summarily deprive either party of their justiciable right to seek alimony.
Though adhering to these views, I agree with the penetrating and painstaking review which the majority has brought to its deliberations here and concur in the result reached.

ON REHEARING GRANTED
REDMANN, Judge.
We granted a rehearing to reconsider the question of the validity of a matrimonial agreement. To avert duplication of the Supreme Court's and counsel's work, we did not limit rehearing, although our order restricted argument to that question. On application by counsel for Mr. Rittiner we specified that our grant of rehearing was "unlimited" notwithstanding the restriction of argument.
The consequence of our grant of unlimited rehearing was the recall of our judgment in its entirety, including its reversal of the trial court's judgment that Mrs. Rittiner was not entitled to alimony because she was at fault. Except that she *684 deemed herself not in need because of Mr. Rittiner's voluntary payments to her, we would have fixed alimony when we decreed her free of fault and ordered its immediate payment without awaiting finality of our judgment, just as a trial judge's alimony decree is immediately in force without awaiting finality; see Shell Oil Co. v. Moore, 1972, 260 La. 855, 257 So.2d 432; Coleman v. Marzullo, La.App. 4th Cir. 1974, 296 So.2d 437, writ refused La., 297 So.2d 206.
Now an application for writs shows that Mr. Rittiner has elected to discontinue his voluntary payments, and Mrs. Rittiner's application for a fixing of the alimony we held her entitled to has been dismissed on an exception to the trial court's jurisdiction relying on La.C.C.P. 2088. We now solve that difficulty by reinstating our original decree only insofar as it declared the ex-wife free of fault and reserved her right to alimony, and this reinstated judgment is made effective immediately so as to entitle the wife to alimony immediately rather than upon the finality of this judgment; Shell Oil and Coleman, supra.
We add, in further response to the writ application, that an appeal divests the trial court of jurisdiction only "over all matters in the case reviewable under the appeal"; C.C.P. 2088. Thus the trial judge did not have the authority to reconsider whether or not the wife was at fault. But no appeal ever deprives the trial court of jurisdiction over a rule (by a spouse already held not to be at fault) to fix or alter alimony on the basis of a change in circumstances occurring after the judgment appealed, because the effect of the new circumstances is not "reviewable under the appeal"; Rakosky v. Rakosky, La.App. 4th Cir. 1973, 275 So.2d 421, writ refused La., 278 So.2d 508.
Original judgment reinstated insofar as it decreed Mrs. Rittiner free from fault and reserved her right to alimony, enforceable immediately. In other respects only the matter remains under submission on rehearing.

ON REHEARING
Our original opinion ruled that the appearance and signature by one prospective spouse at one time and by the other at another time do not constitute "an act before a notary and two witnesses" as required by La.C.C. 2328 for the validity of a matrimonial agreement, when the written document bears only one signature of the notary and of each of only two witnesses. Our view was that those appearances constitute, at best, two acts, in respect to one of which the notary and witnesses did not sign. As to one of the spouses, with whom the notary and witnesses may have signed, we viewed his act as authentic in form. As to the other spouse, however, we viewed his act as an act under private signature: and such an act is not converted into a public or authentic act either by the later addition of signatures of notary and witnesses, or by the earlier presence of those signatures, affixed at the time of the appearance of the first spouse.
Our review of the French authorities[1] shows that, even when art. 1394 French Code Civil required only an act before a notary, the spouses had to execute the act simultaneously. After a February 5, 1957 ruling to that effect by the Court of Cassation, the French Code was amended (Loi 65-570, July 13, 1965) to add that the contract be made before a notary in the simultaneous presence and with the simultaneous consent of the parties. But the amendment further expressly allowed the use of mandataries (as courts had allowed), which is inconsistent with any theory that a continuing simultaneous consent of the parties can only be expressed by one act: a spouse-to-be may have changed his mind, after his act several days earlier authorizing a mandatary to express consent in a marriage contract, and the consent of the spouses can only be found in two acts, namely the marriage *685 contract and the mandate. The French requirement of personal simultaneity is thus empty of substance.
We have concluded that we erred in requiring for the formal validity of an authentic act in Louisiana that the notary and witnesses sign the act at the time the person executing the act signs. We now hold that all that the law requires is that the notary and witnesses be present, C.C. 2328, when each contracting party signs the act, C.C. 2234, and that notary and witnesses themselves also sign the act, although not necessarily at the time that any party signs it. Accordingly, the act before us is not invalid because of the simple facts that the husband and wife in this case did not execute the act in the presence of each other, and that the notary and witnesses did not sign the act at the time that one (or either) party signed it.
Our basic reasoning is that substance should prevail over form unless the law unmistakably requires a contrary result. Here the mature spouses-to-be must be presumed to have desired and consented to the exact agreement contained in the written instrument. The law only requires that the agreement be "made by an act before a notary and two witnesses," C.C. 2328: such an act is an authentic act, C.C. 2234, "executed before a notary public ..., in presence of two witnesses...." Nowhere does the law expressly require that the notary and the witnesses sign the act in the presence of the parties, and we now conclude that we erred in imposing such a requirement.
Although our Supreme Court does readily invalidate testaments for failure to comply with express formal requirements, Succession of Roussel, La.1979, 373 So.2d 155, its frequent act has been to "limit the rigid enforcement of the formalities required in the execution of wills only to those instances in which the law is palpably violated", Succession of Beattie, 1927, 163 La. 831, 112 So. 802, 804. Thus Prudhomme v. Savant, 1922, 150 La. 256, 90 So. 640, accepted a public nuncupative will typewritten by the notary as "written by the notary" within C.C. 1578. Stephens v. Adger, 1955, 227 La. 387, 79 So.2d 491, upheld a private nuncupative will signed by two of its five witnesses only in the presence of the testator and not in the presence of the other three witnesses. The court "will not require strict, technical, and pedantic compliance in form or in language", Succession of Morgan, 1970, 257 La. 380, 242 So.2d 551.
The marriage contract is like the will in that, after the event of marriage as after the event of death, formal invalidity cannot be cured by executing another. The considerations that dictate that a will be maintained if possible dictate that a marriage contract be maintained if possible. Although a marriage or other contract which is required to be but is not an authentic act is invalid (as held by the cases cited in our original opinion), we now hold that there has been no showing that the marriage contract in question here is not an authentic act.
We therefore reverse our earlier ruling insofar only as it decreed the contract invalid. We reinstate our reversal of the trial judge's refusal to decide, and we now remand for litigation of, the husband's demand for a declaration that no community existed between the spouses. A separate opinion has previously reinstated the alimony-entitlement aspect of the judgment. The ex-husband is to pay costs thus far.
NOTES
[1] See also Planiol, Civil Law Treatise La.Law Inst. trans. 1959) II § 147: "When it is a case of a `solemn' act, such as a donation, or a contract of marriage, for which the authentic form is an essential condition, everything is null, the juridical act as well as the writing."
[1] Planiol & Ripert, Traite pratique de droit civil francais, 1925, v. VIII, n. 40; Fuzier-Herman & Josserand, Code civil annote, 1940, v. 5, p. 31, n. 18; Patarin, La reforme des regimes matrimoniaux, 1967, v. 2, p. 30, n. 374; Hamiaut, La reforme des regimes matrimoniaux, 1965, p. 66. n. 1.