393 So.2d 192 (1980)
William D. OLIVER, Sr.
v.
Meridel Vincent OLIVER.
No. 13763.
Court of Appeal of Louisiana, First Circuit.
November 10, 1980.
Rehearing Denied January 26, 1981.
*193 Sam J. D'Amico, Baton Rouge, for plaintiff-appellee William D. Oliver, Sr.
Patsy Jo McDowell, Baton Rouge, for defendant-appellant Meridel Vincent Oliver.
Before LOTTINGER, EDWARDS and PONDER, JJ.
PONDER, Judge.
William D. Oliver, Sr., brought suit against his wife, Meridel Vincent Oliver, seeking a divorce on the ground of living separate and apart for two years. Mrs. Oliver reconvened on the basis of abandonment and sought $1,500 per month in permanent alimony.
Following trial, a divorce was awarded to Mr. Oliver. Mrs. Oliver's reconventional demand was dismissed and her prayer for alimony was rejected. In written reasons for judgment, the trial court specifically found that Mrs. Oliver had constructively abandoned her husband and that her fault had caused the separation.
Mrs. Oliver appeals only that part of the judgment finding her at fault and denying her claim for alimony. We reverse.
The record indicates that Mr. Oliver often drank too much; that he failed to come home at reasonable hours and sometimes remained out overnight; that he moved out of the family domicile several times, only to return later; that he refused to discuss the disruptions caused by his lifestyle; that he had a series of relationships with women other than his wife; that he "would just get furious and most of the time leave" when his daughters "didn't act a certain way to him"; that he would request particular foods for dinner but would fail to return to eat them or would return drunk; that his temper was such that on one occasion he fought with a daughter merely because she fed her cat a bowl of milk; that he refused to come home, even when requested by his daughter; that his wife often found makeup and perfume on his clothes, and sometimes semen in his underwear.
While testifying, Mr. Oliver clearly admitted to more than one adulterous relationship.
The trial court found Mrs. Oliver at fault based on one incident which occurred April 13, 1977. Mrs. Oliver told her husband that the circumstances of their life together were unbearable and that one of them would have to leave. Mr. Oliver left. His *194 leaving initiated the Olivers' final separation.
LSA-C.C. Art. 160[1] controls when a spouse is eligible to collect permanent alimony. A spouse is not deprived of alimony after divorce simply because that spouse was not totally blameless in the marital discord. To constitute fault within the meaning of Article 160, the spouse's misconduct must not only be of a serious nature, but must also be an independent contributory or proximate cause of the separation rather than a justifiable or natural response to initial fault on the part of the other spouse. Bruner v. Bruner, 364 So.2d 1015 (1978); Adler v. Adler, 239 So.2d 494 (La. App. 4th Cir. 1970), writ refused 257 La. 168, 241 So.2d 530 (1970). Fault sufficient to deprive a spouse of alimony is fault which, under LSA-C.C. Art. 138(1)-(8) or Art. 139, would be grounds for a separation from bed and board or a divorce, respectively. Adams v. Adams, La., 389 So.2d 381 (1980); Rittiner v. Sinclair, 374 So.2d 680 (La.App. 4th Cir. 1979).
Mrs. Oliver's actions on the night of April 13, 1977, do not constitute Art. 160 fault. She was merely expressing her utter frustration with Mr. Oliver's lifestyle and the destructive effect it had on their marriage. Her words no more constitute constructive abandonment than did those of Mrs. Guin in Guin v. Guin, 378 So.2d 1022 (La.App. 2nd Cir. 1979), where the court construed a wife's similar warning to her husband not to return if he left as merely being a plea for the husband to spend more time at home. Mrs. Oliver's words were an entirely justifiable response to her husband's unceasing and maritally destructive lifestyle.
The trial court found that Mrs. Oliver began unprovoked arguments with her husband on a weekly basis. This finding is not supported by the record. Her questions and "arguments" were attempts to find out what her husband was doing and to persuade him to keep a normal homelife. Such questioning, in the face of Mr. Oliver's drinking and series of relationships with other women, is not "fault" on appellant's part. Knight v. Knight, 331 So.2d 102 (La. App. 1st Cir. 1976).
Mrs. Oliver's concern for her marriage was manifestly demonstrated when she explained why she forgave a 1973 dalliance of her husband:
"I don't take marriage lightly. I kept thinking that maybe it was just a mid-life crisis or something. Maybe it would pass."
The record, taken as a whole, shows that Mrs. Oliver kept a reasonably neat home in which her daughters felt comfortable entertaining; that Mr. Oliver left because he refused to change his lifestyle which was destructive of their marriage; that Mrs. Oliver is a woman of forty-nine who has few work-skills since she spent her working years raising a family; that Mrs. Oliver has headaches, eye trouble, high blood pressure and arthritis; that Mrs. Oliver's monthly expenses are $1,550; and that Mr. Oliver's net income is at least $30,000 per year.
*195 For the foregoing reasons, that part of the trial court judgment which found Mrs. Oliver at fault is reversed. Permanent alimony is fixed at $867 per month. All costs of this appeal are to be paid by William D. Oliver, Sr. All other costs are assessed half to each party.
REVERSED AND RENDERED.
NOTES
[1] LSA-C.C. Art. 160 provides:

"When a spouse has not been at fault and has not sufficient means for support, the court may allow that spouse, out of the property and earnings of the other spouse, alimony which shall not exceed one-third of his or her income. Alimony shall not be denied on the ground that one spouse obtained a valid divorce from the other spouse in a court of another state or country which had no jurisdiction over the person of the claimant spouse. In determining the entitlement and amount of alimony after divorce, the court shall consider the income, means, and assets of the spouses; the liquidity of such assets; the financial obligations of the spouses, including their earning capacity; the effect of custody of children of the marriage upon the spouse's earning capacity; the time necessary for the recipient to acquire appropriate education, training, or employment; the health and age of the parties and their obligations to support or care for dependent children; any other circumstances that the court deems relevant.
In determining whether the claimant spouse is entitled to alimony, the court shall consider his or her earning capability, in light of all other circumstances.
This alimony shall be revoked if it becomes unnecessary and terminates if the spouse to whom it has been awarded remarries."