I JAMES L. CANNELLA, Judge.
The Plaintiff, Carolyn Zamjahn (Carolyn), appeals from the trial court judgment which holds that the donation of property to her from her former husband, the Defendant, Charles Zamjahn (Charles), was null and void and awards Charles attorney fees of $2600. For the reasons which follow, we affirm in part, reverse in part and remand.
The parties, married on May 25, 1985, entered into a matrimonial agreement before their marriage and, thus, had no community of acquets and gains. All property which they acquired during the marriage was acquired as co-owners. A petition for divorce was filed by Carolyn on July 19, *311 2001. Two days prior to the filing of the divorce petition, the parties executed, at the office of Carolyn’s attorney, an Act of Donation involving two pieces of Jefferson Parish property that the parties had acquired during the marriage. One piece was the matrimonial domicile, located at 412 Aurora Avenue, and the other was located at 2404 Green Acres Road. In the Act of Donation, Charles conveyed his one-half interest in the two pieces of property to Carolyn so that she would own the two parcels as her separate property. In the Act of Donation, Charles also stated that he would pay the mortgage notes on both pieces of property for five years or until they were sold, and he would pay the Aurora property’s associated bills, like utilities and | -¡maintenance. The Act of Donation also contained an acceptance by Carolyn. The Act of Donation and Acceptance appeared to be executed by authentic act, notarized by Richard Alvarez and witnessed by Jenny Hampton (Hampton) and Dianne Landry (Landry). Both parties, the notary and the witnesses all signed at the bottom of the document.
On January 22, 2002, after the filing of the divorce petition, Carolyn filed a rule for interim periodic spousal support and to enforce the Act of Donation. On that same date, Charles filed an answer and reconventional demand to have the donation declared null and void and without legal effect. Charles filed two supplemental pleadings which asserted that the Act of Donation was null because (1) it was executed under duress, (2) it lacked proper form, (3) Defendant’s signature was not properly witnessed, (4) it was procured through threats and undue influence, and (5) there was a failure of cause.
Charles asserted that he and Carolyn were having marital difficulties and had physically separated. He contended that they had agreed upon a plan whereby he would give her full ownership of the two pieces of immovable property (the subject of the donation) and in exchange she would give him full ownership of the business which they owned. He further claimed that she had threatened to tell his children about some internet sites that he had viewed, if he did not sign over full ownership of the property to her. Finally, he had hoped that, going forward with the donation he would obtain some favor so that they might reconcile. Instead, she filed for divorce two days later, which had obviously been in preparation, and she refused to sign over her interest in the business to him.
Following trial on the merits, a judgment with reasons was rendered on April 16, 2002 holding that the Act of Donation was null and void and awarding Charles attorney fees in the amount of $2600. In his reasons, the trial judge said that he did not find Carolyn to be credible. He found that the Act of Donation was null and |4void because it was not properly executed as an authentic act and because it was executed by Charles under duress. He also found that there was a total failure of cause because Carolyn did not turn over full ownership of the family business to Charles in exchange for ownership of the property. It is from this judgment that Carolyn appeals.
On appeal Carolyn assigns six errors. She challenges the trial court findings concerning the improper form of the donation as well as the trial court’s findings of duress and failure of cause and consideration. -She argues that the trial court erred in awarding attorney fees to Charles and in not awarding attorney fees to her. Finally, she takes issue with certain evi-dentiary rulings which allowed Charles to testify to the marital history going back 15 years. Charles, on the other hand, argues that the trial court was correct in all of its *312 findings and conclusions and he requests attorney fees for the appeal.

IMPROPER FORM

On appeal Carolyn argues that the trial court erred in finding that the donation should be declared null and void because it was not executed in the proper form. More particularly, Carolyn argues that the trial court was clearly wrong or manifestly erroneous in finding that one of the witnesses to the donation, Landry, was not present at the time that Charles executed the donation. Contrary to the trial court finding, the testimony of the notary and both of the witnesses, was consistently to the effect that all three of them were in the room and witnessed Charles signing his name on the Act of Donation. They all testified further that after Charles signed his name, the notary and two witnesses affixed their signatures to the document.
The testimony regarding a lack of proper execution of the donation came only from Charles. He testified that the Act of Donation was not signed by him on July 17th as the document indicated. He stated that he went to Alvarez’s office on | .July 13th and signed the Act of Donation with only he and Alvarez present. He stated that he did not recall that the witnesses were in the room with him when he signed. In support of his position, Charles produced a document that was a copy of the donation with only his signature on it. He contends that his possession of a copy of the donation with only his signature on it supports his testimony that he signed the document with only himself and Alvarez in the office and that he was given a copy of it before it was witnessed. Charles also introduced into evidence two copies of the time sheet or jacket log for his file from Alvarez’s office. One copy had been sent to the office of the Louisiana State Bar Association Disciplinary Counsel in November of 2001, pursuant to a complaint by Charles. The other was presented at trial. The latter copy had been changed regarding the activities of July 17, 2001, by adding information about the presence and names of the witnesses. Charles argues that the altered documents call Alvarez’s veracity into question.
Alvarez testified that he gave Charles a copy of the donation before it was finished, but that in no way indicated that the witnesses were not present. Alvarez stated that he did not know anything about the additions to the client log entry for July 17th and that Hampton handled that. Hampton explained that in other business that the firm had, it became imperative that the names of witnesses be noted, so she started doing it in all the files and simply added that information to this file afterward.
In finding that the donation lacked proper form, the trial court found that there had been testimony that Landry was not in the room when Charles signed. The reasons for judgment stated,
Mr. Alvarez testified that he and the two witnesses were present when Charles signed the document. Mr. Alvarez’s secretary testified that she was present and that the other witness was down the hall in another office, where she was employed. Coupled with the documents | ^introduced, the court concludes that the act was not in proper form and must fall for that reason.
Based on our review of the record, we find that the trial judge was clearly wrong in his recollection of Hampton’s testimony regarding Landry not being present when the donation was signed. There is no testimony to that effect in this record. Thus, we agree with Carolyn that the trial court erred in its factual finding that one of the witnesses was not in the room and did not observe Charles sign.
*313 However, that does not end our inquiry concerning whether the Act of Donation was executed in proper form for an authentic act. At this point we must review the evidence de novo and apply the law accordingly.
Charles alone testified that he signed the Act of Donation three days before it is dated and that only he and Alvarez were in the room at the time. That testimony is expressly contradicted by Alvarez, Hampton and Landry. All three of these witnesses testified[1] that they were all in the room when Charles signed the Act of Donation and that all three of them saw him sign it. They further testified that, following his signing, the two witnesses affixed their signatures and then Alvarez affixed his. While the embellished file log is troubling, there were no changes made in the July 17th entry insofar as it provided that “Chuck [Charles] came into office to sign documents — waiver.” There is no entry supporting Charles’ position that he came to the office on July 13th and signed. Moreover, when cross-examined on the matter, and specifically asked whether the two witnesses were in the room when Charles signed the donation, Charles did not respond definitively, but only answered “not to my recollection.”
There is no doubt that if the donation was signed as Charles described it, that is, with Charles signing the donation in the presence of the notary but not the witnesses, it would not be a valid authentic act. La. C.C. arts. 1536, 1833. Ritz v. Ritz, 95-0683 (La.App. 5th Cir.12/13/95), 666 So.2d 1181, writs denied, 96-0131 (La.3/8/96), 669 So.2d 395. However, we cannot conclude, from the evidence presented, that the donation was executed as Charles described it. Rather, we find that the evidence presented indicates that the two witnesses and the notary were present and observed Charles sign. Further, according to their consistent testimony, they then all three signed the Act of Donation, witnessing his signature. We find that the part of the Act of Donation evidencing the donation by Charles was in proper form.
However, a donation inter vivos is not valid until accepted. The problem with the validity of the donation here does not lie in the execution of the donation, but rather in the execution of the acceptance.
La. C.C. art. 1540, regarding when donations inter vivos become effective, provides:
A donation inter vivos shall be binding on the donor and shall produce effect only from the day of its being accepted in precise terms.
The acceptance may be made during the lifetime of the donor by a posterior and authentic act, but in that case the donation shall have effect, with regard to the donor, only from the day of his being notified of the act establishing that acceptance. (Emphasis added.)
La. C.C. 1833, defining an authentic act, provides:
An authentic act is a writing executed before a notary public or other officer authorized to perform that function, in the presence of two witnesses, and signed by each party who executed it, by each witness, and by each notary public before whom it was executed.
To be an authentic act, the writing need not be executed at one time or place, or before the same notary public or in the presence of the same witnesses, provided that each party who executes it does so before a notary public or other officer authorized to perform that function, and in the presence of two *314 witnesses and each party, each witness, and each notary public signs it.
|sIf a party is unable or does not know how to sign his name, the notary public must cause him to affix his mark to the writing.
It has long been held that a donation is not effective as to the donor until it is accepted in accordance with law. Without acceptance, the donation is invalid and, prior to acceptance, it may be revoked by the donor. Works v. Noble, 177 La. 681, 149 So. 423 (La.1933); Lyons v. Lawrence, 118 La. 461, 43 So. 51 (La.1907). Applying these precepts to the evidence before us, we find that Carolyn’s acceptance of the donation was not in compliance with the statutory requirements for an authentic act and the act was, therefore, invalid.
Based on the evidence in this case, as we found above, Charles came into Alvarez’s office and, in the presence of Alvarez, Hampton and Landry, signed the Act of Donation. Following his signing of the donation, Hampton, Landry and Alvarez signed, witnessing Charles’ signing. Sometime later in the day, Carolyn came to Alvarez’s office and, as the witnesses testified, in the presence of Alvarez, Hampton and Landry, signed the Act of Donation as the donee, accepting the donation. The notary and two witnesses, who had previously signed the donation some hours earlier, did not thereafter sign the document attesting to Carolyn’s signature.
The attestation clauses in the document, did not apply to Carolyn when the notary and witnesses signed the document because Carolyn had not yet appeared before them and signed it. Thus, the signatures of the notary and witnesses attesting to the party’s appearance before them could only have been applicable to Charles when they signed the document. The document recites:
AND NOW, unto these presents comes and appears Donee for the purpose of accepting the said donation with gratitude and affection from her husband.
Donor and Donee acknowledge....
IcTHUS DONE AND PASSED, in my office in the Parish of Jefferson, State of Louisiana, on the day, month, and year hereinabove first written, in the presence of the undersigned competent witnesses who hereunto sign their names, together with the said Donor, Donee and me, Notary, after due reading of the whole.
When the notary and witnesses signed the document, Carolyn had not yet appeared and signed the document. Thus, their signatures could not have been attesting to her appearance and signature, they can only apply to Charles. For them to be applicable to Carolyn’s signature, they had to sign again, making the attestation clauses in the document correct recitations of the facts. To hold otherwise would be to allow the notary and witness to attest to false information. Since they did not sign the document again, after Carolyn appeared and signed the acceptance, we find that Carolyn’s acceptance was not in compliance with law and was, therefore, invalid. Since the donation is not valid until accepted, the Act of Donation is null and void.
Carolyn argues that there is no legal requirement that the donor and donee must sign the donation at the same time or that the witnesses and notary must sign at the same exact time as the party. Consequently, she argues that since the signatures of the notary and witnesses that observed her signing the document appear on the document, this should suffice as compliance with the statutory requirements for an authentic act. We disagree.
*315 The purpose of authentic act requirements is to insure the validity of a signature on a document and that the person whose name appears thereon is the person who actually signed the document. The notary and witnesses attest to seeing the party sign the document. To reach the conclusion argued by Carolyn, we must find that it is acceptable for the notary and witnesses to sign the document, attesting to the validity of the party’s signature, before the person actually signs the document. Such a procedure would defeat the entire purpose of Imthe authentic act requirement. While we have reviewed the case of Rittiner v. Sinclair, 374 So.2d 680 (La.App. 4th Cir.1978), cited and relied on by Carolyn, we found no case that permitted the procedure utilized here, where the witnesses and notary signed the document attesting to a party’s signature hours before the party actually signed. Moreover, Rittiner was decided, based on the authentic act requirements provided in former La. C.C. art. 2234.[2] That article did not mandate the same writing and signature requirements that are now contained in the governing law here, La. C.C. art. 1833.
When Alvarez, Hampton and Landry signed the donation as notary and witnesses, they did so attesting to Charles’ signature and fulfilled the authentic act requirements for part of the agreement. While La. C.C. art. 1833 does not mandate that all parties sign at the same time, or appear before the same notary and witnesses, it does mandate that each party sign the document before a notary and in the presence of two witnesses, who each must sign the document. Carolyn could have taken the donation to another notary, days later and signed it before a notary and two witnesses who all signed the document and it would have been valid. But we find that it was not in compliance with the legal requirements for her to come to the notary’s office, hours after the donor executed the document by authentic act, with the notary’s and witnesses’ signatures along affixed, and simply add her signature to the document.
Based on the evidence, we find that no one signed, witnessing Carolyn’s signature as the donee accepting the donation. Therefore, we find that the signature of the donee as to the acceptance, which must also be witnessed by a notary and two witnesses, who must also sign the document, was not in compliance Inwith the statutory requirements for an authentic act and was invalid. Absent a valid acceptance, the donation is invalid.
Based on the foregoing, we find that the donation is null and void because it was not executed and accepted in proper form as required by law.
Carolyn argues that the trial court erred in finding that the donation is invalid because it was executed by Charles under duress, exerted on him by Carolyn, and that the trial court further erred by awarding attorney fees to Charles on this basis. Charles, argues that the trial court was correct in finding that his consent to the donation was vitiated by the threats from Carolyn to disclose to others his interest in “adult” internet sites. Under La. C.C. art. 1964, where rescission is granted because of duress, the trial court may award attorney fees. Thus, Charles argues that the trial court award of attorney fees was proper.
*316 In considering whether to invalidate the donation on the grounds that it was signed under duress, we note that that the donation has already been held invalid because it was not executed in the required form. Thus, the claim that the contract should be rescinded due to duress is moot. However, because it relates to the claim for attorney fees, we note that the facts presented here do not rise to the level of duress that would have warranted the rescission of the donation. Thus, we find that attorney fees were not properly awarded.
The testimony reveals that Carolyn had discovered that Charles was visiting “adult” sites on the internet. She found this very upsetting and intolerable. While the marriage does not appear to have been the most stable for many years, this seems to have been the precipitating event for the physical separation. While Charles may have had some concern that Carolyn would in fact tell people why she asked him to leave the marital domicile, the record also reveals that the execution of the donation was more likely motivated by Charles’ desire and hope for reconciliation and not out of fear. Charles contacted the attorney and instructed li¡>him what to place in the donation. Charles insisted on executing the document. Charles set up the appointment to execute the donation and arrived at the attorney’s office alone. All three witnesses testified that it did not appear that Charles was being forced to execute the document and that it appeared that he was signing it willingly and of his own free will.
La. C.C. art. 1962 provides that “[a] threat of doing a lawful act or a threat of exercising a right does not constitute duress.” Thus, we find that any threats by Carolyn, to tell Charles’ children why the parties separated, did not rise to the level of duress necessary to invalidate the donation.
The award of attorney fees is only allowed where there is a contractual or statutory right to attorney fees. Langley v. Petro Star Corporation of Louisiana, 01-0198 (La.6/29/01), 792 So.2d 721, 723. Absent a finding that the donation should be rescinded due to duress, there is no statutory or contractual right in either party to an award of attorney fees. Therefore, the award of attorney fees in favor of Charles is vacated and set aside and Carolyn’s request for attorney fees is denied.
The trial court also found that the donation should be set aside for lack of cause or consideration. As stated above, since the donation is being held invalid for want of form, this issue is moot.
Accordingly, based on the foregoing, the trial court judgment declaring the Act of Donation null and void and denying attorney fees to Carolyn is affirmed. The award of attorney fees to Charles is vacated and set aside. The case is remanded. Costs of appeal are to be borne by each party.
AFFIRMED IN PART; REVERSED IN PART; REMANDED.

. Landry’s testimony was by way of deposition introduced at trial.

. Former La. C.C. art. 2234, as written at the time which Rittiner was decided, provided in pertinent part:
The authentic act, as relates to contracts, is that which has been executed before a notary public or other officer authorized to execute such functions, in presence of two witnesses, aged at least fourteen years, or of three witnesses, if a party be blind. If a party does not know how to sign, the notary must cause him to affix his mark to the instrument.