STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2020CA0783
c/w
NUMBER 2020CA0784

SHANTEL YOUNG TATE

VERSUS

CHATWIN TATE, SR.

**Judgment Rendered:**   MAY 1 0 2021

* * * * * *

The Family Court
In and for the Parish of East Baton Rouge
State of Louisiana
Suit Number F204121cw210877

Honorable Lisa Woodruff White, Presiding

* * * * * *

Charles E. Griffin, II
St. Francisville, LA

Mark M. Lazarre
Baton Rouge, LA

Heidi M. Vessel
Zachary, LA

Counsel for Defendant/Appellant
Chatwin Tate, Sr.

Counsel for Plaintiff/Appellee
Shantel Young Tate

* * * * * *

BEFORE: GUIDRY, McCLENDON, AND LANIER, JJ.

McClendon, J., agrees and assigns additional reasons.

**GUIDRY, J.**

Defendant, Chatwin Tate, Sr., appeals from a judgment of the trial court finding insufficient evidence to nullify a May 5, 2016 marital donation. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

Chatwin Tate, Sr. and Shantel Young Tate were married on August 4, 1998. Thereafter, Mrs. Tate filed two petitions for divorce, one in 2011 and another in 2015, with each resulting in a stipulated judgment followed by reconciliation of the parties. On April 5, 2016, Mrs. Tate again filed a petition for divorce, alleging that the parties separated on February 1, 2016. On July 26, 2016, Mrs. Tate filed a petition to judicially partition community property, to which she attached a detailed descriptive list dated May 5, 2016, listing the marital home located at 1830 Saul Avenue, Zachary, Louisiana, as a community asset. The trial court signed a judgment of divorce on July 12, 2017.

Thereafter, on April 4, 2018, Mr. Tate filed a motion to modify custody, support and exclusive use of former matrimonial domicile. Mrs. Tate answered the motion and filed exceptions raising the objection of no cause of action and no right of action. In her exceptions, Mrs. Tate alleged that Mr. Tate had no cause or right of action to claim entitlement to use of the former marital home because on May 5, 2016, he donated his undivided one-half interest in the community family home to her and as such, the residence became her separate property. Mrs. Tate attached a copy of the martial donation as an exhibit to her exceptions.

Mr. Tate thereafter filed a petition for nullity, seeking to have the July 12, 2017 divorce judgment and the May 5, 2016 marital donation declared null and void and formally vacated and set aside. Mr. Tate alleged that Mrs. Tate fraudulently asserted that the parties had been living separate and apart when in fact, they were living together and had been travelling together as a family. Additionally, Mr. Tate

2

denied ever signing the martial donation or alternatively, that he did not know and was not told that the document was a donation.

Following a trial on July 17, 2019, the trial court signed a judgment ordering that the divorce granted Mrs. Tate on July 12, 2017 is an absolute nullity and finding insufficient evidence to nullify the May 5, 2016 marital donation. Mr. Tate filed a motion for new trial on the issue of the nullity of the marital donation. The trial court held a hearing on Mr. Tate's motion for new trial on October 29, 2019, at the conclusion of which the trial court orally denied the motion. Mr. Tate now appeals from the trial court's judgment.

## DISCUSSION

### Rule to Show Cause

On November 23, 2019, this court, *ex proprio motu*, issued a rule to show cause, noting that the appellate record did not contain a ruling on Mr. Tate's motion for new trial. As such, this court found that the appeal appeared to be premature and ordered the parties to show cause why the appeal should not be dismissed.

Louisiana Code of Civil Procedure article 2087(D), related to the delay for taking a devolutive appeal and La. C.C.P. art. 2123(C), related to the delay for taking a suspensive appeal, both provide that "[a]n order of appeal is premature if granted before the court *disposes* of all timely filed motions for new trial or judgment notwithstanding the verdict. The order becomes effective upon the *denial* of such motions." (Emphasis added.)

In the instant case, the record demonstrates that the trial court issued an oral ruling at the conclusion of the hearing on the motion for new trial denying the motion. Accordingly, we find that the trial court "disposed" of the motion for new trial prior to Mr. Tate filing the instant appeal, and as such, we recall the show cause order issued by this court.

3

## Action for Nullity

It is undisputed that at the time the parties executed the subject donation, they were still married. Louisiana Civil Code article 1744 provides:

> A person may make a donation *inter vivos* to his future or present spouse in contemplation of or in consideration of their marriage in accordance with the provisions of this Chapter. Such a donation shall be governed by the rules applicable to donations *inter vivos* in general, including the rules that pertain to the reduction of donations that exceed the disposable portion, but only insofar as those general rules are not modified by the following articles.
>
> A donation *inter vivos* by a person to his future or present spouse in contemplation of or in consideration of their marriage that is not made in accordance with the provisions of this Chapter shall be governed solely by the rules applicable to donations *inter vivos* in general.

Louisiana Civil Code article 1747 further provides:

> The donation shall be made by a single instrument in authentic form. The instrument, which shall expressly state that the donor makes the donation in contemplation of his prospective marriage or in consideration of his present marriage, as the case may be, shall be signed at the same time and at the same place by the donor and the donee.

Mr. Tate asserts on appeal that the record is clear that the parties did not sign the instant donation "at the same time" and as such, the trial court erred in finding that the donation was valid as to form.

We agree that the record in fact establishes that Mr. and Mrs. Tate did not sign the donation at the same time. However, this failure does not render the May 5, 2016 donation null and void. Louisiana Civil Code article 1747 must be read in conjunction with the other Civil Code articles governing *inter vivos* interspousal donations, including La. C.C. art. 1744. As such, under the plain language of Article 1744, a marital donation not made in accordance with Article 1747 is "governed solely by the rules applicable to donations *inter vivos* in general." Watts v. Watts, 17-0369, p. 4 (La. App. 1st Cir. 12/29/17), 241 So. 3d 330, 333, writ denied, 18-0185 (La. 3/23/18), 239 So. 3d 294.

4

Louisiana Civil Code article 1541 requires that donations *inter vivos* be made by authentic act under the penalty of absolute nullity. An authentic act is defined by La. C.C. art. 1833 as "a writing executed before a notary public or other officer authorized to perform that function, in the presence of two witnesses, and signed by each party who executed it, by each witness, and by each notary public before whom it was executed."

In the instant case, after reviewing the testimony and evidence, and considering the credibility of the witnesses, the trial court found the testimony of Mrs. Tate and Heidi Vessel, Mrs. Tate's attorney who prepared and notarized the donation, to be more credible regarding the facts surrounding the execution of the donation. According to Ms. Vessel, on May 5, 2016, Mr. Tate came into her office and signed the donation in her conference room, in her presence and in the presence of two of her office staff. Ms. Vessel stated that she, Mr. Tate, and the two witnesses signed the donation at that time. Ms. Vessel and Mrs. Tate both stated that Mrs. Tate came into the office the same day, after Mr. Tate had signed the donation, and Mrs. Tate signed the donation in the presence of the same notary and two witnesses. Ms. Vessel stated that the process she followed complied with her standard office policy in signing authentic acts. Mr. Tate, however, stated that he had no recollection of the events surrounding the execution of the donation, but he did not believe Ms. Vessel was in the room when he signed the donation.

Accordingly, from our review of the record, we find no error in the trial court's decision to credit the testimony of Mrs. Tate and her attorney regarding the facts surrounding the signing of the donation and as such, likewise find no error in the trial court's finding that the donation was valid as to form.

Furthermore, we find no error in the trial court's finding that Mr. Tate knew he was signing a donation, signing over his one-half interest in the community home

5

to Mrs. Tate. Again, the trial court evaluated the credibility of the witnesses, particularly noting the specificity of recollection by Ms. Vessel and Mrs. Tate.

According to the record, Ms. Vessel stated that Mr. Tate had contacted her and her mother-in-law, who Mr. Tate had known for years, several times expressing remorse and wanting to reconcile with Mrs. Tate. Ms. Vessel further stated that Mr. Tate also expressed to her that he and Mrs. Tate had reached an agreement regarding him signing the donation, and that he wanted to complete whatever Mrs. Tate's wishes were. Ms. Vessel stated that Mr. Tate reviewed the donation, that he knew what he was signing, and that he signed the donation without any reservations. Mrs. Tate also stated that she had presented Mr. Tate with the suggestion of her buying him out of the community home, in which she ran a daycare business, or donating his interest in the home to her, and Mr. Tate suggested donating his interest in the home. Mrs. Tate stated that Mr. Tate called her after he signed the donation and told her that he had signed it so she didn't have to worry about buying him out of the house. Mrs. Tate stated that he specifically used the word "donation" when speaking to her. Mrs. Tate said Mr. Tate only complained about the donation when he subsequently became aware that she was in a new relationship.

Mr. Tate did not dispute that it was his signature on the donation. However, Mr. Tate stated that he did not read the donation and thought he was signing something granting Mrs. Tate the temporary use of the home. Mr. Tate stated that he did not call Ms. Vessel's mother-in-law, he did not ask his wife for forgiveness, and he did not agree to give Mrs. Tate his one-half interest in the community home.

Again, considering the conflicting testimony and the reasonable evaluations of credibility made by the trial court, we do not find that the trial court erred in finding that Mr. Tate knowingly signed the donation, giving Mrs. Tate his one-half

interest in the community home.[1]  Accordingly, having found no manifest error in the trial court's factual findings, we likewise find no error in the trial court's judgment finding that there was insufficient evidence to nullify the May 5, 2016 marital donation.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.  All costs of this appeal are assessed to Chatwin Tate, Sr.

**AFFIRMED.**

---

[1] Mr. Tate asserts on appeal that a detailed descriptive list signed by Mrs. Tate on the same date as the donation acknowledges the marital home as community property.  However, Ms. Vessel testified that, although she could not recall when the detailed descriptive list was signed that day, her practice is to prepare the detailed descriptive list prior to any donations or settlement agreements.  (R. 204)  Ms. Vessel stated that she has never done it any other way, and she did not think that the detailed descriptive list was signed after the property was donated.  (R. 204)  From our review of the entire record, we cannot say the trial court's decision to credit the testimony of Ms. Vessel is unreasonable or erroneous.

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2020 CA 0783

c/w

2020 CA 0784

SHANTEL YOUNG TATE

VERSUS

CHATWIN TATE, SR.

**********************************************

**McClendon, J., agrees and assigns additional reasons.**

Donations inter vivos consist of two parts: the donation and the acceptance. **Wiedemann v. Wiedemann**, 09-41 (La.App. 5 Cir. 12/29/09), 30 So.3d 972, 973, writ denied, 2010-0242 (La. 4/9/10), 31 So.3d 390. While the donation must be made by authentic act, the acceptance may be made in the act of donation or subsequently in writing. LSA-C.C. arts. 1541 and 1544.

As noted by the majority, the record in this matter reflects that the notary and two witnesses signed the act of donation, thereby attesting that they observed the appearance and signatures of both the donor and donee, before the donee appeared and affixed her signature to the document.

In **Wiedemann**, 30 So.3d 972, decided under the current version of LSA-C.C. art. 1544 (prior art. 1540), the Fifth Circuit determined that although the notary and witnesses signed attesting that the donee had appeared and signed before the donee actually did so, the donee's signature on the act of donation was nonetheless "a sufficient writing to perfect the acceptance in accordance with present Art. 1544." Thus, the donation inter vivos was found to be valid. **Wiedemann**, 30 So.3d at 974.

Accordingly, with respect to the donation, the attestations of the notary and witnesses as to the donor's appearance and signature satisfy the authentic act requirements. Regarding the acceptance, the attestations of the notary and witnesses

do not apply to the donee's appearance and signature; however, the donee's signature

on the document is nevertheless a writing that satisfies the requirements for a valid

acceptance under LSA-C.C. art. 1544.[1] Accordingly, I agree with the majority that the

donation inter vivos is valid and enforceable.

---

[1] I additionally note that under the facts of this case, had the acceptance been required to be made by authentic act, the outcome would have been different. To hold that the attestations made to Mr. Tate's signatures were also applicable to Mrs. Tate's signature would have allowed the notary and witnesses to attest to false information. See **Zamjahn v. Zamjahn**, 02-871 (La.App. 5 Cir. 1/28/03), 839 So.2d 309, 314, writ denied, 2003-0574 (La. 4/25/03), 842 So.2d 410 (considering similar facts under the prior law, LSA-C.C. art. 1540, which required that acceptance of a donation be made by authentic act).